494 A.2d 971

**Frederick Warren CRADDOCK**

v.

**STATE of Maryland.**

**No. 1578, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

July 11, 1985.

Certiorari Denied Oct. 21, 1985.

Mark Colvin, Asst. Public Defender, Baltimore (Alan H. Murrell, Public Defender, Baltimore, on brief), for appellant.

Jillyn K. Schulze, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Baltimore, Andrew L. Sonner, State's Atty. for Montgomery County and Kathleen Toolan, Asst. State's Atty. for Montgomery County, Rockville, on brief), for appellee.

Before GARRITY, ADKINS and GETTY, JJ.

GETTY, Judge.

Appellant, Frederick Warren Craddock (hereinafter "appellant"), and codefendant Robert Tyson were convicted of daytime house-breaking and theft, by a jury sitting in the Circuit Court for Montgomery County (Mitchell, J.). Appellant raises three issues in this appeal from those convictions:

1. whether the trial court erred in refusing to strike or to instruct the jury to disregard testimony to the effect that appellant had been arrested several times in the past on "open warrants";

2. whether the trial court committed plain error material to appellant's rights when it instructed the jury that it could find appellant guilty of theft even if its members could not agree on which form of theft;

3. whether, during the sentencing phase, the court erroneously considered prior arrests that did not result in convictions?

The record reveals that the Montgomery County residence of William and Marjorie Campbell was broken into and ransacked on the morning of February 2, 1984, and that clothing, jewelry, and silverware valued in excess of $7,000.00 were reported missing. Kathy Bues, the Campbell's next-door neighbor, testified that on the morning of the theft she observed a white male wearing a black cap and carrying a black garbage bag walk down the Campbell's driveway and get into a small, "drab" colored, 1976 or 1977 automobile occupied by two other individuals.

At about 5:00 p.m. that day, Officer Bruce Lewis of the Prince George's County Police Department responded to a call regarding a fight at 5266 Marlboro Pike. There, Officer Lewis saw appellant walking away from a parked car and toward an apartment building, and also saw Tyson, appellant's codefendant, "walking around in a circle in the parking lot and mumbling to himself."

Lewis, observing that a knife was protruding from Tyson's back pocket, stopped and frisked him. The knife proved to be a stainless steel butter knife. The frisk also produced a camera with a Montgomery College sticker on it. Tyson then removed from his pockets several items of jewelry, including a high school ring with the inscription "WWC." A skullcap was also removed from Tyson's back pocket.

A radio check then revealed that the car in which appellant and Tyson allegedly had been seen was reported to have been stolen.[1] Tyson was arrested there in the parking lot; appellant was arrested inside his adjacent apartment. A search of the car, a 1983 Dodge Colt, uncovered jewelry and coins. A search of appellant incident to his arrest in his apartment also uncovered numerous pieces of jewelry. Some of the jewelry taken from appellant, from Tyson, and from the car, was identified by the Campbells as having been among the items stolen from their home, as was the knife and camera taken from Tyson. The skullcap removed from Tyson's back pocket was identified by Bues, the Campbell's next-door neighbor, as the type of cap worn by the person she had observed walking down the Campbell's driveway on the morning of the housebreaking.

# I

On direct examination, Officer Lewis testified for the State that he had observed appellant, whom he "knew from previous contacts," walking away from the car and toward the apartment building. On cross-examination by Tyson's counsel, the following exchange took place:

Q. You testified that you had had some contact with Mr. Craddock before?

A. Yes, ma'am.

Q. One of the other individuals. Was that contact with him involved in his selling items on the street previously?

A. *I remember several times participating in arrests with him with open warrants. I can't remember selling on the streets.*

MR. LAMBETH [APPELLANT'S COUNSEL]: Your Honor, I object to any further questions along this line.

THE COURT: All right.

---

1. The auto theft charge was subsequently nolle prossed.

MR. LAMBETH: And ask that the question and his response be stricken, Your Honor.

THE COURT: That motion will be denied.

MR. LAMBETH: And the jury asked to ignore that, please.

THE COURT: That will be denied also. Place another question to the witness. (Emphasis added.)

■ Appellant urges that the lower court erred in refusing to strike the above underscored answer and in refusing to instruct the jury to disregard it. We agree, finding that the admission of Officer Lewis' answer violated the rule that "evidence which in any manner *shows or tends to show* that the accused committed another crime wholly independent of that for which he is on trial, even though it be a crime of the same type, is irrelevant and inadmissible." *Ross v. State,* 276 Md. 664, 669, 350 A.2d 680 (1976) (emphasis added). It is not argued that this testimony was admitted under any of the well-recognized exceptions to the general rule excluding "other crimes" evidence.

■ Thus, we must reverse "unless the State can show beyond a reasonable doubt that the error did not contribute to the conviction." *Id.* at 674, 350 A.2d 680. The Court in *Ross* explained that

"[t]he essence of this test is the determination whether the cumulative effect of the properly admitted evidence so outweighs the prejudicial nature of the evidence erroneously admitted that there is no reasonable possibility that the decision of the finder of fact would have been different had the tainted evidence been excluded." *Id.*

Applying this standard, the Court reversed a defendant's conviction for possessing heroin with intent to distribute. In that case, the two chief prosecution witnesses were a police detective who confiscated the drugs after observing the defendant deliver them, and the paid police informant who actually made the controlled buy and who testified that he and the defendant used to "work together selling narcotics."

The Court of Appeals determined that the cumulative effect of the police detective's eyewitness testimony, together with the physical evidence and properly admitted portions of the informant's testimony, did not render the informant's improper allegations of prior criminal activity harmless beyond a reasonable doubt. The Court concluded that, despite the strong nature of the properly admitted evidence of guilt, there remained "at least a reasonable possibility that the improper testimony of prior criminal conduct contributed to the conviction." *Id.* at 674, 350 A.2d 680.

In the instant case, we find that the properly admitted evidence of guilt was at least as strong as that introduced in *Ross*, because appellant's possession of stolen property within seven hours of the theft was *undisputed.*

We also find the potential prejudice of the erroneously admitted evidence to be less in the instant case than it was in *Ross*. In *Ross*, the defendant complained of an in-court allegation that he had a history of committing specific and serious crimes, *i.e.*, selling narcotics. In the instant case, by contrast, the appellant suffered from a somewhat vague reference to his having been arrested in the past on unspecified charges. We note that the State did not elicit this testimony and that it never referred to it at any point during the trial or closing arguments.

We hold that, although the trial court should have struck the inadmissible testimony and instructed the jury to disregard it, reversal is unwarranted because, on the facts of this case, there is no reasonable possibility that these errors affected the jury's verdict.

## II

Next, appellant urges that the trial judge committed "plain error" when he instructed the jury that it could find appellant guilty of theft even if its members could not agree as to what form of theft had been proven. The court stated:

"... For purposes of this case, you are instructed that the offense of theft occurs when a person either willfully or knowingly obtains control of or exerts control over the property of the owner without the owner's authorization, or possesses stolen property knowing or believing it probably has been stolen and the person has at least one of the following different types of intent.

First, he has the purpose of depriving the owner of the property. Or, he willfully or knowingly uses, conceals or abandons the property in a manner which deprives the owner of the property.

Third, he uses, conceals or abandons the property, knowing that his actions probably will deprive the owner of his property. These methods of theft may be proven in the alternative.

The State need not prove that the defendant acted in both of these fashions to commit theft. It need only prove, beyond a reasonable doubt, that all the elements of one or the other one, have been proven. Nor need all the members of the jury agree on which of these methods of theft were committed by the defendant.

All that is required is that all members of the jury are convinced beyond a reasonable doubt, that all elements of one or the other form of theft have been proven."

Appellant was charged in the second count of the indictment with unlawfully stealing personal property, including sterling silver and jewelry, belonging to William Walter Campbell, having the value of Three Hundred Dollars ($300.00) or greater, pursuant to one scheme and continuing course of conduct. In short, appellant was accused of violating Article 27, Sec. 342 of the Maryland Code; the theft statute.

■ A brief review of the theft statute and its purpose is essential in deciding whether the trial court's instruction permitting a conviction without a unanimous verdict as to any particular form of the crime constitutes error. *See State v. McKay*, 280 Md. 558, 375 A.2d 228 (1977). Effec-

tive July 1, 1979, the Legislature combined a number of separate offenses, each involving some type of deprivation of one's property, into one statute. Currently, the offenses of larceny, embezzlement, false pretenses and receiving stolen property are combined into one theft statute. The purpose of the theft statute is to avoid the subtle distinctions that existed and had to be alleged and proved to establish the separate crimes under the former law.

Article 27, Sec. 341 of the present statute makes clear that theft constitutes a single crime embracing the former separate crimes of larceny, larceny by trick, larceny after trust, embezzlement, false pretenses, shoplifting and receiving stolen property. The statute provides that:

"... An accusation of theft may be proved by evidence that it was committed in any manner that would be theft under this subheading, notwithstanding the specification of a different manner in the information ..., subject only to the power of the Court to ensure a fair trial by granting a continuance or other appropriate relief if the conduct of the defense would be prejudiced by lack of fair notice or surprise."

■ Article 27, Sec. 342 sets forth five different factual situations which, if proved, constitute the crime of theft. The categories are:

(a) Obtaining or exerting unauthorized control over property of the owner.

(b) Obtaining control over property of the owner by deception.

(c) Possessing stolen personal property knowing that it has been stolen, or knowing that it probably has been stolen.

(d) Obtaining control over the property of another knowing that it is lost or mislaid property.

(e) Obtaining the services of another by deception, or knowing that the services are provided without the consent of the person providing them.

Clearly, the gravamen of the offense of theft is the depriving of the owner of his rightful possession of his property. The particular method employed by the wrongdoer is not material; "an accusation of theft may be proved by evidence that it was committed in any manner that would be theft under this subheading.  ..." Art. 27, Sec. 341; *Whitehead v. State,* 54 Md.App. 428 at 442, 458 A.2d 905 (1983). *See Jones v. State,* 303 Md. 323, 493 A.2d 1062 (1985).

■■■ Generally, jurors are not required to uniformly accept all of the evidence presented in order to arrive at a unanimous verdict. Some jurors unquestionably reject evidence that others accept in determining guilt or innocence. In short, the law requires unanimity only in the verdict, not in the rationale upon which the verdict is based. In the case *sub judice,* the statute sets forth various acts that constitute the crime of theft. As long as jurors unanimously agree that theft in some form was committed, nothing more is required.

## III

Appellant's presentence report listed, *inter alia,* several arrests without indicating their ultimate disposition. He argues that because the State cannot prove that the judge did not rely on these arrests in fashioning his sentences, we must vacate these sentences. We disagree.

■■ True, the sentencing judge would have erred had he considered a bare list of prior arrests that did not result in convictions. *See Henry v. State,* 273 Md. 131, 147, 328 A.2d 293 (1974). The burden of proof on this issue, however, rested with the appellant, and not with the State. *Cf., United States v. Garcia,* 693 F.2d 412 (5th Cir.1982) (defendant must show that judge relied on improper information).

■■ We find no evidence in the record to support an inference that the judge considered appellant's prior arrests in imposing the relatively light sentences of four years on the daytime housebreaking count (as compared to the statu-

tory maximum of ten years), concurrent with two years for theft (as compared to a statutory maximum of 15 years). Moreover, appellant's counsel explicitly reminded the judge that he could not consider the bare fact that appellant had prior arrests. We will not speculate as to whether the sentencing judge nevertheless relied upon these arrests. Judges are presumed to know the law. *Hebb v. State*, 31 Md.App. 493, 499, 356 A.2d 583 (1976).

JUDGMENTS AFFIRMED.

COSTS TO BE PAID BY APPELLANT.