526 A.2d 614

**David Junior OGBURN**

v.

**STATE of Maryland.**

**No. 1293, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

June 8, 1987.

Bradford C. Peabody, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Ronald M. Levitan, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, Warren B. Duckett, Jr., State's Atty. for Anne Arundel County and Eugene Whissel, Asst. State's Atty. for Anne Arundel County, Annapolis, on the brief), for appellee.

Submitted before WILNER, ROSALYN B. BELL and ROBERT M. BELL, JJ.

ROBERT M. BELL, Judge.

David Junior Ogburn, appellant, was convicted by a jury in the Circuit Court for Anne Arundel County of assault with intent to murder, robbery, and related offenses. Upon receiving sentences totaling thirty years, he appeals, presenting three questions for our review:

1. Did the trial court err in ruling that the defense may not impeach a State's witness by eliciting that he received probation before judgment for theft or any other offense?

2. Did the trial court err in refusing to grant a motion for mistrial after a State's witness referred to an unrelated crime of theft by the Appellant?

3. Did the trial court err in refusing to grant a motion for mistrial, after a State's witness referred to an unrelated drug offense by the Appellant?

The home of the sixty-four year old victim was broken into while she was taking a nap. Awakened by a crashing

noise in her basement, she went to investigate. When she opened her basement door, she saw a strange man ascending the basement stairs. Quickly closing the door, the victim retreated and attempted to telephone the police. Before she could complete the call, however, the man broke down the basement door, and finding her at the phone, grabbed her by the neck, and severely beat her. After he had gone through the house gathering items of personalty, the man asked the victim whether she had any guns. As a ruse, the victim told him there might be one in the basement. The victim, who had been forced to accompany him to the basement, managed to get out of the house while he was searching for a gun. As she attempted to climb her neighbor's fence, the man caught up to her and threw her to the ground. Her screams aroused the attention of her neighbors.

One of the victim's neighbors, Nathan Singleton, was outside working on a car two doors from the victim's home. Hearing the victim's screams and seeing her being attacked by a man, he rushed to her rescue. The man escaped, however.

Singleton's identification of appellant as the victim's assailant was the only conclusive identification evidence offered by the State; the victim was unable to identify her assailant and blood test and fingerprint evidence was inconclusive.

### 1. Impeachment

During cross-examination, appellant sought to impeach Singleton by inquiring into his criminal record. When the prosecutor objected, proffering that Singleton's record consisted of only one offense, theft, he believed, for which Singleton received probation before judgment, appellant contended that because it proved a prior bad act relevant to credibility he should nevertheless be allowed to impeach Singleton by proving that he received that disposition for theft. The trial judge rejected the argument on two grounds: first, because a probation before a judgment

disposition is not a conviction and second, because the bad act sought to be proved was "tangential to the trial" and, therefore, inadmissible.[1]

■ On appeal, appellant has all but conceded, as he must, the correctness of the court's ruling that a probation before judgment disposition is not a conviction. *Myers v. State*, 303 Md. 639, 647–48, 496 A.2d 312 (1985), in which the Court of Appeals held "that probation before judgment under § 641 is not a 'conviction', and a person who receives probation before judgment is not convicted of the crime for which he has been found guilty, unless the person violates the probation order and a court enters a judgment on the finding of guilty", is dispositive of this point. This is true notwithstanding that the issue in *Myers* was whether, in light of Md.Cts. & Jud.Proc.Code Ann. § 9–104, prohibiting "[a] person convicted of perjury" from testifying, a State's witness, who had received probation before judgment for perjury, was competent to testify, rather than the impeachment use of that disposition pursuant to Md.Cts. & Jud. Proc.Code Ann. § 10–905(a).[2] "Conviction" in both contexts has the same meaning. *See Myers*, 303 Md. at 642–45, 496 A.2d 312; *Sigma Reproductive Health Center v. State*, 297 Md. 660, 665, 467 A.2d 483 (1983) ("The general rule in

---

1. Prior to the court's ruling, appellant suggested that:
   *"... maybe the court is premature in—in denying my right to inquire with the probation before verdicts [sic], I would suggest that maybe we bring Mr. Singleton in and outside the presence of the jury allow me to inquire into the bad act for which he received the probation before judgment. ...* And then let the court determine whether or not it was the type of conduct which would affect his credibility and should that therefore be admitted. ...
   The court did not adopt the suggestion and the matter has not been pursued on appeal. Whether that procedure should have been followed is, therefore, not before us.

2. Section 10–905(a) provides:
   (a) *In General.*—Evidence is admissible to prove the interest of a witness in any proceeding, or the fact of his conviction of an infamous crime. Evidence of conviction is not admissible if an appeal is pending, or the time for an appeal has not expired, or the conviction has been reversed, and there has been no retrial or reconviction.

criminal cases is that no final judgment exists until after conviction and sentence has been determined[.]").

Appellant's position on appeal is that he was entitled to impeach the State's witness with the evidence that the witness had committed theft, a bad act affecting the witness' credibility, even though the witness was given probation before judgment. In order to place appellant's argument in context, it is necessary that we review the teachings of *State v. Cox*, 298 Md. 173, 468 A.2d 319 (1983). There, the testimony of the victim was the sole direct evidence linking the defendant to the sexual assault charges on trial. Therefore, while cross-examining her, the defendant sought to impeach her credibility by showing that she had, on a previous occasion, under oath, charged another person with criminal assault and, at the previous trial, recanted that charge under cross-examination. The trial judge refused to permit this line of cross-examination. Addressing whether that refusal was error, the Court of Appeals reiterated that a witness may be cross-examined about prior bad acts, as distinct from prior convictions, relevant to an assessment of that witness' credibility. 298 Md. at 179, 468 A.2d 319. It pointed out, however, that "... Such inquiry [is allowed] to be conducted when the trial judge is satisfied that there is a reasonable basis for the question, that the primary purpose of the inquiry is not to harass or embarrass the witness, and there is little likelihood of obscuring the issue on trial." *Id.* Thus, where the inquiry seeks to determine "the fact of prior misconduct",

> ... [i]t is the responsibility of the trial judge to determine the relevance and materiality of the alleged prior misconduct, for it is purely collateral to the issue on trial and should only be admitted if probative of a lack of credibility. The trial judge must constantly be alert to make certain that the probative value of the inquiry outweighs its potential prejudice to the witness and that the inquiry does not stem primarily from a desire to harass or embarrass the witness.

298 Md. at 180, 468 A.2d 319. The Court also pointed out that any restriction of cross-examination "should be manifested by the exercise of sound discretion." 298 at 183.

*Cox* thus requires that four factors be present before a witness may be cross-examined on prior bad acts:

1. The act or acts must be relevant to an assessment of the witness' credibility;

2. There must be a reasonable basis for inquiry concerning the prior bad act;

3. The primary purpose of the inquiry must not be to harass or embarrass the witness; and

4. There must be little likelihood of obscuring the issue on trial.

Whether these factors exist is a matter left to the sound discretion of the trial judge.

Taking each of these factors in turn, the inquiry sought to be made by appellant apparently meets the *Cox* test.

■■■ Theft under Md.Code Ann. art. 27 § 342, "constitutes a single crime embracing the former separate crimes of larceny, larceny by trick, larceny after trust, embezzlement, false pretenses, shoplifting and receiving stolen property."[3] *Craddock v. State,* 64 Md.App. 269, 277, 494 A.2d 971 (1985). *See* Md.Code Ann. art. 27 § 341. *See also Kawamura v. State,* 299 Md. 276, 295–97, 473 A.2d 438 (1984), which recognized that the offense reflected in § 342(f)(2) is substantially the same as the crime of larceny previously codified in § 340. In Maryland, larceny has long been considered to be an "infamous crime", which reflects upon a person's honesty. *State v. Bixler,* 62 Md. 354, 360 (1884). *See also* Md.Code Ann. art. 33, § 3–4(c), disqualifying person convicted of "theft or other infamous crimes" from voting. Maryland cases have also recognized that

---

**3.** This was accomplished by Chapter 849, Act of 1978, which repealed the former sections of art. 27 codifying the separate offenses and reenacted § 340–344. For a discussion of the purpose of this change, *see Craddock,* 64 Md.App. at 277–78, 494 A.2d 971.

"[t]heft, regardless of the amount involved, is and always has been regarded as an extremely serious offense...." *Kawamura*, 299 Md. at 296, 473 A.2d 438, citing *In Re Application of David H.*, 283 Md. 632, 640, 392 A.2d 83 (1978) ("thievery of a repetitive nature ... is usually indicative of a serious character flaw"); *State v. Huston*, 281 Md. 455, 461, 379 A.2d 1027 (1977) (theft "has in it an element of dishonesty, such as ... might indicate that 'the witness [was] devoid of moral perception", being "a person [who] would regard lightly the obligations of an oath to tell the truth."). Evidence that a witness has been convicted of an infamous crime is always admissible to impeach the witness' credibility. *Ricketts v. State*, 291 Md. 701, 706, 436 A.2d 906 (1981); *Watson v. State*, 68 Md.App. 168, 173, 510 A.2d 1094 (1986). Even if this were not so, evidence of lesser crimes, which tends to show that a person should not be believed under oath may also be admitted.[4] *Ricketts*, 291 Md. at 708, 436 A.2d 906; *Duckett v. State*, 61 Md.App. 151, 157, 485 A.2d 691 (1985), *aff'd*, 306 Md. 503, 510 A.2d 253 (1986). Thus, evidence that a witness has been found guilty of theft is relevant to an assessment of credibility and, therefore, may be admissible to impeach his or her credibility.

The State proffered that the witness sought to be impeached had received probation before judgment for theft. Pursuant to Md.Code Ann. art. 27 § 641,[5] that dispo-

---

4. Assuming that theft is not an infamous crime, it would then be necessary to show, in addition, that the crime was not committed at a point in time too remote from the trial as to dilute its effect on credibility. *See Ricketts*, 291 Md. at 708, 436 A.2d 906; Duckett, 61 Md.App. at 154, 485 A.2d 691. The record in this case does not reveal when the theft was committed by the witness. Therefore, it would have been necessary for the trial judge to have further inquired so as to determine whether the impeachment effect of the bad act was stale.

5. Section 641 provides in pertinent part:
    (a) *Probation after plea of finding of guilt; power of court to provide terms and conditions; waiver of right to appeal from judgment of guilt.*—(1)(i) Whenever a person accused of a crime pleads guilty or nolle contendere or is found guilty of an offense, a court exercising

sition may be given only if the person has pled guilty or nolle contendere or *is found guilty of an offense. See Horsey v. State,* 56 Md.App. 667, 468 A.2d 684 (1983), *cert. denied,* 299 Md. 426, 474 A.2d 218 (1984), in which we held that "a factual determination ... as to the commission of an offense beyond a reasonable doubt in an adversary proceeding" is the required predicate for a § 641 disposition. *Id.,* 56 Md.App. at 672, 468 A.2d 684. Since "the fact of prior misconduct" must be established as a prerequisite to obtaining a probation before judgment disposition, the proffer that a witness has received that disposition for a theft offense necessarily establishes a reasonable basis for the inquiry concerning that offense.

■ Once the relevance of the bad act to the assessment of the witness' credibility has been established and a reasonable basis for the inquiry has been shown, it follows, *a fortiori,* that the primary purpose of the inquiry is the impeachment of the witness' credibility. The incidental effect of the inquiry may be to embarrass the witness; however, that is no different, and certainly no greater, than any inquiry, made of a witness on cross-examination, the purpose of which is to impeach that witness' credibility. In any event, to the extent that one of the purposes of the cross-examiner is to embarrass the witness, it certainly would not be the primary purpose.

---

criminal jurisdiction if satisfied that the best interests of the person and the welfare of the people of the State would be served thereby, and with the written consent of the person after determination of guilt or acceptance of a nolle contendere plea, may stay the entering of judgment, defer further proceedings, and place the person on probation subject to reasonable terms and conditions as appropriate.

\* \* \* \* \* \*

(c) *Fulfillment of terms of probation.*—Upon fulfillment of the terms and conditions of probation, the court shall discharge the person from probation. The discharge is final disposition of the matter. Discharge of a person under this section shall be without judgment of a conviction and is not a conviction for purposes of any disqualification or disability imposed by law because of conviction of crime.

Finally, *Cox* makes clear that inquiries concerning prior misconduct are subject to the rule that "... [t]he cross-examiner is bound by the witness' answer and, upon the witness' denial, may not introduce extrinsic evidence to contradict the witness or prove the discrediting act." 298 Md. at 179, 468 A.2d 319. Consequently, because "[t]he inquiry virtually stops with the question and answer", the likelihood that the issue on trial will be obscured is, at best, minimal.

The State rejoins that "only convictions of infamous crimes are admissible for impeachment purposes," citing *Scott v. State,* 64 Md.App. 311, 321, 494 A.2d 992 (1985), and that "although [*Myers, supra* ] and *Evans v. State,* 304 Md. 487, 499 A.2d 1261 (1985) ] specifically address the application of Cts. and Jud.Proc.Code Ann. § 9–104 (which bars testimony of convicted perjurers[,] a person charged with theft who is granted probation before judgment would also be shielded from impeachment under Cts. and Jud.Proc. § 10–905; both statutes employ the word 'conviction'." This argument has relevance only with regard to appellant's contention that a probation before judgment disposition constitutes a conviction or is tantamount to a conviction. We have already rejected that contention. We reiterate, however, that the only issue presented in *Myers* and *Evans* was the threshold one concerning the effect of probation before judgment on a witness' competency to testify; the use of the underlying act, notwithstanding the probation before judgment disposition, to impeach the witness' credibility simply was not presented.

Implicitly, the State may be arguing that the legislative intent in enacting § 641(c)—that probation before judgment not be a conviction augurs in favor of shielding the act for which probation before judgment was imposed from being used for impeachment purposes and, in fact, requires it because "a probationer who fulfills the terms and conditions of his probation avoids the stigmatizing effect of a criminal conviction." *Myers,* 303 Md. at 647, 496 A.2d 312. If that were the intent of the legislature, the words of the statute

do not express it. Section 641(c) provides simply that satisfactory discharge from probation "is not a conviction for purposes of any *disqualification or disability* imposed by law because of conviction of crime." (emphasis added) Use of a crime for which probation before judgment was the disposition for impeachment purposes is neither a disqualification nor disability imposed by law because of conviction of crime. Black's Law Dictionary, Rev. 4th ed. (1968) defines "disqualified" as "to divest or deprive of qualifications; to incapacitate; to render ineligible or unfit", at 558 and "disability" as "the want of legal capacity to perform an act", at 548. The context in which the terms are used in § 641(c) suggests that disqualification and disabling statutes are those which render a person ineligible, by reason of conviction of crime, for enjoyment of, or participation in, rights or privileges enjoyed by the public at large without restriction. *See, e.g.* Md.Cts. and Jud.Proc. Code Ann. § 9–104 (disqualification by conviction of perjury); Md.Code Ann. Art. 33, § 3–4(c) [6] (disqualification from voting by virtue of conviction of "theft or other infamous crime"). Md.Cts. and Jud.Proc.Code Ann. § 10–905(a) has no disqualifying or disabling effect; nor could it have. Md.Cts. and Jud.Proc.Code Ann. § 9–101 specifically provides that "a person shall not be excluded from testifying in a proceeding because of incapacity from crime or interest in the matter in question." All § 10–905(a) does is to explicitly permit the use in a proceeding of evidence of the fact of conviction of an infamous crime.

The language of § 641 is clear and unambiguous. *See City of Baltimore v. Hackley*, 300 Md. 277, 283, 477 A.2d 1174 (1984). It does not even remotely suggest that a probation before judgment disposition was intended to insu-

---

**6.** *Conviction of crime.*—No person shall be registered as a qualified voter if he has been convicted of theft or other infamous crime, unless he has been pardoned, or, in connection with his first such conviction only, he has completed any sentence imposed pursuant to that conviction, including any period of probation imposed by virtue of parole or otherwise in lieu of a sentence or part of a sentence.

late a witness from the rigors of cross-examination, including impeachment by showing prior misconduct affecting credibility. Had the General Assembly intended that persons, found guilty, but not convicted, of a crime relevant to the assessment of credibility, be shielded from impeachment on that basis, it surely could have so provided. *See Myers,* 303 Md. at 648–49, 496 A.2d 312. "[B]y its careful use of the dispositive terms associated with this case", 303 Md. at 648, 496 A.2d 312, it is obvious that it did not choose or intend to do so.

In summary, we discern no principled basis for permitting a witness to be cross-examined concerning prior misconduct affecting the witness' credibility for which the witness has neither been charged nor tried and disallowing such examination as to misconduct which resulted in a probation before judgment disposition. In the latter situation, not only has the witness been charged and tried for the offense, but he has been found guilty of the offense, although not convicted, thus rendering the fact of the misconduct beyond dispute. On the contrary, then, permitting the witness to be impeached on the basis of an infamous crime for which the witness received probation before judgment, would appear to be more reliable since the fact of the misconduct will have been established beyond dispute.[7]

Although recognizing that *Cox* permits a witness to be impeached by showing the fact of prior misconduct, the factors to be considered by the trial judge in determining whether the witness may be impeached on that basis, and, at least implicitly, that the evidence in the instant case showed the fact of prior misconduct, the State nevertheless

---

7. It is, of course, the case that the rule is different when the defendant is on the witness stand. *Cox,* 298 Md. at 180, 468 A.2d 319, citing *United States v. Schiller,* 187 F.2d 572, 576 (2nd Cir.1951) for the proposition that "impeachment should be limited more strictly in favor of the accused than in the case of an ordinary witness." In such case, "[t]he trial judge must carefully scrutinize the potential prejudice to the defendant lest the jury conclude that the defendant should be convicted because of his history of bad or immoral conduct." 298 Md. at 180, 468 A.2d 319.

asserts that the court did not abuse its discretion in restricting appellant's cross-examination of the witness. As we have seen, the proposed inquiry in this case meets the *Cox* test. Therefore, had the cross-examination been allowed, the court would not have abused its discretion. It does not necessarily follow, however, that by refusing to allow it, the court abused its discretion. To resolve the question, we once again revisit *Cox*.

The *Cox* Court did not limit the rule it espoused to the facts there existing. Thus, it did not purport to prescribe that, in order to be used on cross-examination for impeachment purposes, the prior misconduct be of a particular kind or bear a particular relationship to the charge on trial. And the Court, made clear that it was not enunciating an absolute rule. On the contrary, the Court was emphatic in stating that the exercise of a sound discretion by the court in this area is key. See *Cox*, 298 Md. at 178–79 and 183–84, 468 A.2d 319.

With this in mind, we observe that the prior misconduct in *Cox* bore a striking relationship to the charge on trial. The witness had allegedly made a similar charge against another person and later recanted that charge on cross-examination in the prior case. The suggested misconduct there, therefore, was so clearly related to the witness' credibility concerning the charge on trial and an attack on her credibility was so critical to the accused's defense that to exclude evidence of it would be to invite a miscarriage of justice. The situation *sub judice* is a step removed.

Judicial discretion is "that power of decision exercised to the necessary end of awarding justice and based upon reason and law, but for which decision there is no special governing statute or rule." *Colter v. State*, 297 Md. 423, 426–27, 466 A.2d 1286 (1983), quoting *Saltzgaver v. Saltzgaver*, 182 Md. 624, 635, 35 A.2d 810 (1944). Necessarily then, when there is no hard and fast rule, the decision of the trial judge must be evaluated from the standpoint of the soundness of the exercise of discretion. Where the proprie-

ty of the restriction of cross-examination is the issue, we will find an abuse of discretion when the restrictions imposed "are such as plainly inhibit the ability of the accused to obtain a fair trial." *DeLilly v. State*, 11 Md.App. 676, 681, 276 A.2d 417 (1971), or "[forestall] an adequate basis for assessment of credibility," *Deinhardt v. State*, 29 Md. App. 391, 397, 348 A.2d 286 (1975), or, as was the case in *Cox*, invite a miscarriage of justice. Where, on the other hand, when reviewed in light of the total circumstances, the inquiry has probative value and may tend to impeach the witness' credibility, but its relationship to the issue on trial is less direct and does not present so substantial a risk of a miscarriage of justice, the trial judge may permit the inquiry; however, he does not abuse his discretion if he does not. This latter situation is the situation *sub judice*. Accordingly we conclude that the trial judge did not abuse his discretion when he refused to permit inquiry concerning the theft for which the witness received probation before judgment. Were we to conclude otherwise—that whenever probation before judgment has been imposed for an infamous crime, the fact of the witness' commission of that crime is always admissible as a prior bad act, the preclusion of which is an abuse of discretion—we would be explanding *Cox* and in the process, effectively eliminating judicial discretion in this area.

## 2.  Mistrial

During direct examination by the State, a witness referred, on two separate occasions, to appellant's involvement in a crime unrelated to that on trial. The circumstances surrounding those remarks are revealed by the following colloquy:

Q. [by the prosecutor]  All right, and then what did you do?

A. We left from down mother—his mother-in-law's house and went up front, to apartments up front and right on behind the apartments up front was a four

tires, five cases of oil and one more item, I just didn't know what else.

Q. Okay and did Mr. Ogburn get those items too?

DEFENSE COUNSEL: Objection, Your Honor.

Q. Who—who got those items?

A. Junior (appellant) and Coco (Williams) and Bunny (Samuels) loaded them in the car.

Q. And by Junior you mean Mr. Ogburn?

A. Uh hum.

Q. Okay. All right, and what happened next?

A. After they got the car loaded, Junior axted (sic) Coco was I going with them. Coco said yeah, I want him to ride with me and we went to D.C. with the stuff.

Q. So the four of you rode to D.C. with this property?

A. Uh hum.

Q. Okay. And why did you go with them?

A. Because Coco axted (sic) to go with it.

Q. Okay.

A. And we's from the same hometown and ever thing we s'posed (sic) to be friends.

Q. Friends?

A. Uh hum.

Q. Okay. And did you then take a ride somewhere?

A. We rode to D.C.

Q. All right. What happened in D.C.?

A. Went over to a fence over there behind—off of Florida Avenue and sold the stuff.

Q. Who sold the stuff?

A. Bunny sold it for Junior.

Q. Okay, Now did there come a—

[DEFENSE COUNSEL]: Your Honor, I would object. I move for a Mistrial at this point.[8]

Argument was presented at a bench conference, after which the trial judge denied the motion, instructing the prosecutor to "get to the point." No request to strike the witness' answer or for any other relief was made by appellant. When questioning resumed, the following occurred:

Q. Mr. Butler, did there come a time that a—that an argument occurred inside this—the car?

A. I believed it stopped on "W" Street.

Q. Uh huh.

A. They got some dope.

Q. Well—

[DEFENSE COUNSEL]: Objection, Your Honor, move for a Mistrial again.

COURT: All right. Well, I'll sustain the objection. Disregard that, I'm only con—concerned with what may be relevant to this case and I would ask the State's Attorney to get into it. Don't—don't go into anything else except what he's asking you. All right, go ahead Mr. State's Attorney.

Q. Did there come a time that Mr. Ogburn and the person you call Coco, Dennis Williams, got into a disagreement?

A. They got in a argument.

Q. All right now, did Mr. Ogburn in this argument, say something to Mr. Williams, the person you call Coco?

A. Yeah, he told Coco, say, you want me to do the same thing to you I did to that old Bitch, down that basement that got away from me.

Having elicited the answer he wanted, the State's Attorney moved to another subject.

---

8. Appellant failed to make a timely objection to the objectionable answers and, so, it is arguable that he waived his objection to them.

Appellant argues that the denial of his motion for mistrial was reversible error. He asserts that the evidence, which tended to show his guilt of other crimes, one of the same type as that on trial, was wholly irrelevant and highly prejudicial, the jury was permitted to convict him on the basis of his criminal character. Appellant concedes in brief that the witness' allusion to selling goods to a fence was "volunteered" by the witness.

The decision to declare a mistrial is discretionary with the trial court, *Wilhelm v. State,* 272 Md. 404, 409, 326 A.2d 707 (1974), *Lusby v. State,* 217 Md. 191, 195, 141 A.2d 893 (1958), whose exercise of discretion will not be overturned on appeal unless clear prejudice is shown. *Wilhelm,* 272 Md. at 429, 326 A.2d 707; *Tinnen v. State,* 67 Md.App. 93, 101, 506 A.2d 656 (1986). The court should exercise its discretion to declare a mistrial with the greatest caution under urgent circumstances, and for very plain and obvious causes. *United States v. Perez,* 9 Wheat. 579, 580, 6 L.Ed. 165 (1824). A mistrial should only be declared when there is "manifest necessity for the act" and not for light and transitory reasons which do not result in any real prejudice to the accused. *Wilhelm,* 272 Md. at 430, 326 A.2d 707. Moreover, appropriate deference must be given to the peculiarly superior position of the trial judge to assess the prejudicial effect of any improper evidence on the accused's right to a fair trial. *Id.,* 272 Md. at 429, 326 A.2d 707.

The improper comments were volunteered by the witness and not in response to the State's questions. Appellant did not move to strike the comments; however, the court sustained his objection to the reference to "dope" and advised the jury to "[d]isregard that." The court's denial of the mistrial motions was presumably based upon its belief that there was no manifest necessity for the action. Giving the trial judge's decision the deference to which it is entitled, we do not believe that he abused his discretion as to either ruling.

**514**

JUDGMENTS AFFIRMED.
COSTS TO BE PAID BY APPELLANT.