699 A.2d 505

**Kami Lee ANTHONY**

v.

**STATE of Maryland.**

**No. 1621, Sept. Term, 1996.**

Court of Special Appeals of Maryland.

Sept. 4, 1997.

---

120

Claudia Cortese, Assistant Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for Appellant.

Diane E. Keller, Assistant Attorney General (J. Joseph Curran, Attorney General, Baltimore, and David Weston Gregory, State's Attorney for Queen Anne's County, Centreville, on the brief), for Appellee.

Submitted before HARRELL and EYLER, JJ., and JOHN J. GARRITY, Judge (retired), Specially Assigned.

EYLER, Judge.

Kami Lee Anthony, the appellant, was convicted by a jury in the Circuit Court for Queen Anne's County (John W. Sause, Jr., J.) of conspiracy to distribute cocaine. Appellant was sentenced to a term of fifteen years' incarceration for the conviction. Two questions are presented on appeal:

 I. Was the evidence sufficient to support appellant's conviction of conspiracy to distribute cocaine?

 II. Did the trial court improperly consider appellant's probations before judgment in sentencing appellant?

We hold that the evidence was sufficient to support appellant's conviction for conspiracy to distribute cocaine and we affirm the judgment of the trial court. We further hold that the trial court did not improperly consider appellant's probations before judgment in determining her sentence.

## FACTS

At approximately 6:30 p.m. on June 15, 1995, Trooper First Class Keith Elzey, a member of the Maryland State Police Drug Enforcement Division, was working in an undercover capacity investigating drug activity in Grasonville, Queen Anne's County. He pulled his unmarked vehicle up to the house at 200 Schoolhouse Lane, the residence of a man known as Bosley and his girlfriend, Tanya. A woman, whom Trooper Elzey identified at trial as appellant, approached him and asked if he was "looking for Bosley." When the trooper replied that he was, she told him that Bosley was asleep, and asked him "how much" he wanted. Trooper Elzey understood her to be asking how much crack cocaine he wanted. Trooper Elzey responded that it was "okay," and asked her what was "going on." Appellant told him that Bosley was "all out," which Elzey understood to mean all out of crack cocaine. Trooper Elzey then asked about Tanya. Appellant told him that Tanya had "gone to get a hit." Appellant offered to take the trooper somewhere, he believed to get some crack cocaine, but he declined. Appellant then told him to come back and "do some partying," which he understood to mean "smoke crack cocaine."

Trooper Elzey left, but returned to the house a short time later. At that time, he saw appellant and Tanya in the front yard. He stopped his vehicle. Trooper Elzey, Tanya, and appellant had a conversation about crack cocaine [1], after which Trooper Elzey and Tanya left together in the trooper's car. Trooper Elzey subsequently dropped Tanya off at a different location.[2]

The trooper returned to Schoolhouse Lane at approximately 7:45 p.m. He saw appellant and another woman [3] at the

---

1. The trooper did not relate the conversation itself.

2. Trooper Elzey testified that he purchased crack cocaine from Tanya on this occasion, but the testimony was stricken upon objection by appellant.

3. This individual was never identified.

Senior Center on Route 18, near Schoolhouse Lane, and heard appellant call to him. When he pulled over, appellant asked whether Tanya had "taken care" of him. He replied that Tanya had given him "a few crumbs," meaning some crack cocaine. Appellant then told Trooper Elzey, "[T]hat is the way she is, just a crack-head." She then told the trooper, "Come on, I'll get something." Appellant, Trooper Elzey, and the other woman got into the trooper's car and appellant told the trooper to drive to Cemetery Road. While they were on that road, appellant yelled, "There he is," and told Trooper Elzey to stop. The trooper did so. Appellant asked Trooper Elzey for money. The trooper gave appellant $20, and told her to get him "twenty." Appellant then exited the vehicle and approached Paul Richardson, a man from whom the trooper had previously bought crack cocaine. After appellant and Richardson conversed, Richardson handed appellant a substance and appellant handed him the $20. Appellant returned to the car and got in. Trooper Elzey and the two women left the area.

When they were back on Route 18, appellant handed Trooper Elzey the suspected crack cocaine. Trooper Elzey told her that he had to go and instructed her to leave the car. At that time, appellant "started yelling, screaming, cussing, saying that she wasn't going anywhere until we did some partying." The unidentified woman, who to that point had not said anything, got out of the car and told appellant to do the same. Appellant "kept on cussing, and saying she wasn't going anyplace until we lit up, lit up, smoked the crack." Trooper Elzey again told appellant to get out of the car, but "[s]he just said not until we party and smoke some crack." Eventually, after half a minute to a minute, appellant exited the car and walked away.

## DISCUSSION

### I.

Appellant was originally charged with possession of cocaine, possession of cocaine with intent to distribute, and conspiracy

to distribute cocaine. Pursuant to Maryland Code, Courts & Judicial Proceedings Article, § 10–1003(a)(1), appellant demanded that the technician who tested the substance be present to testify at trial. The State failed to comply with that demand.[4] As a result, the trial court refused to admit into evidence the substance that appellant had given to Trooper Elzey. He also refused to admit testimony by the trooper as to what the substance appeared to be.

After the State rested its case, appellant moved for a judgment of acquittal. The following is relevant:

[DEFENSE COUNSEL]: May I be heard, Your Honor, at the bench.

(At the bench)

Basis for my motion—

THE COURT: The conspiracy count is right there on the evidence.

[DEFENSE COUNSEL]: You still have to have the drug to show there was a conspiracy.

THE COURT: Ever tried a murder case, no body there[?]

[DEFENSE COUNSEL]: Your Honor, proof of the body. There's got to be proof.

THE COURT: They are all scheduled, cocaine. Not that they did it. That they conspired to do it. That is all.

The trial court denied appellant's motion on all counts. After the defense rested, appellant renewed her motion. The trial court ultimately granted appellant's motion for judgment on the counts of possession of cocaine and possession with intent to distribute cocaine, but denied the motion as to the count for conspiracy to distribute cocaine. Appellant now contends that the State was required to prove that the substance distributed by appellant was, in fact, cocaine and that, absent such proof, the evidence was insufficient to sustain her conviction for conspiracy to distribute cocaine.

---

4. Apparently, the State's Attorney overlooked the demand, which was included in a lengthy discovery request.

■ In a criminal action, when a jury is the trier of fact, appellate review of sufficiency of evidence is available only when the defendant moves for judgment of acquittal at the close of all the evidence and argues precisely the ways in which the evidence is lacking. *Brummell v. State*, 112 Md. App. 426, 428, 685 A.2d 835 (1996); *Garrison v. State*, 88 Md.App. 475, 478, 594 A.2d 1264, *cert. denied*, 325 Md. 249, 600 A.2d 418 (1991); Maryland Rule 4–324(a). The issue of sufficiency of the evidence is not preserved when appellant's motion for judgment of acquittal is on a ground different than that set forth on appeal. *Graham v. State*, 325 Md. 398, 416, 601 A.2d 131 (1992); *Pugh v. State*, 103 Md.App. 624, 650–51, 654 A.2d 888, *cert. denied*, 339 Md. 355, 663 A.2d 73 (1995); Maryland Rule 4–324(a).

■ In the present case, appellant argued at trial that the State was required to produce the cocaine she distributed to Trooper Elzey in order to establish that she had committed the offenses charged. This was not a correct statement of law. The nature of the substance distributed to the trooper could have been proved by other, sufficient evidence. *One 1979 Cadillac Seville v. State*, 68 Md.App. 467, 471–2, 513 A.2d 927 (1986) (admission by owner of vehicle that substances found in the vehicle were marijuana and cocaine was sufficient evidence upon which to base forfeiture of the vehicle). *See also Best v. State*, 79 Md.App. 241, 255, 556 A.2d 701 (1989) (recognizing that identity of a substance as cocaine may be proved by circumstantial evidence).

In her brief, appellant broadens her argument, contending not that the State had to produce the cocaine itself, but that it had to prove that the substance was cocaine. Even if we give appellant the benefit of the doubt and interpret her argument at trial to encompass this argument, she will not prevail.

■ Appellant was convicted of conspiracy to distribute cocaine. The crime of conspiracy is complete when the unlawful agreement is reached, and no overt act in furtherance of the agreement need be shown. *Townes v. State*, 314 Md. 71, 75, 548 A.2d 832 (1988).

A criminal conspiracy consists of the combination of two or more persons to accomplish some unlawful purpose or to accomplish a lawful purpose by unlawful means. The essence of a criminal conspiracy is an unlawful agreement.

■ Accordingly, it was only necessary that the State prove the agreement to distribute cocaine, not that the substance distributed was actually cocaine.

Thus, in *United States v. Murray*, 527 F.2d 401, 412 (5th Cir.1976), the Fifth Circuit Court of Appeals explained:

> The important element of a conspiracy charge is the agreement. If [two of the appellants] conspired and agreed to distribute heroin, it matters not that later what the government agents actually received was a non-narcotic substance.

Accordingly, in *United States v. Dunbar*, 590 F.2d 1340 (5th Cir.1979), the Court affirmed appellant's conviction for conspiracy to possess with intent to distribute methaqualone tablets, despite the fact that the substance turned out to be diazepam. The Court held that the evidence showed an agreement to distribute methaqualone; the true identity of the substance was immaterial. Similarly, in *United States v. Senatore*, 509 F.Supp. 1108 (E.D.Pa., 1981), the United States District Court held that the defendant was properly convicted for conspiracy to distribute a controlled substance, Quaaludes, even though the substance that he actually delivered to government agents was not a controlled substance. The important factor, according to the Court, was what the defendant thought he was selling, not what the substance actually was. *See also Grill v. State*, 337 Md. 91, 651 A.2d 856 (1995), holding that the doctrine of "factual impossibility" did not prevent a conviction for attempting to purchase heroin when the substance purchased was actually a "look-alike" drug. Courts considering the issue have held that "factual impossibility" is not a defense to a conspiracy charge. *See United States v. Giry*, 818 F.2d 120 (1st Cir.), *cert. denied*, 484 U.S. 855, 108 S.Ct. 162, 98 L.Ed.2d 116 (1987); *United States v.*

*Senatore, supra; See also* Wayne LaFave and Austin W. Scott, Jr., *Criminal Law,* § 6.5 at 547 (2d. Ed.1986).

*United States v. Mahabir,* 858 F.Supp. 504 (D.Md.1994), cited by appellant, does not contradict this principle. The defendant in *Mahabir* was convicted of violating 21 U.S.C. § 846, the federal statute prohibiting conspiracy to distribute a controlled dangerous substance, by conspiring to distribute cocaine. The court held that the defendant could be convicted of conspiracy to distribute cocaine if he distributed any substance in the same class as cocaine, even if he did not know which drug he was distributing. However, he could not be convicted of that offense if he believed that the substance he was distributing did not fit into that category. As in the cases cited above, it was the defendant's intent that was controlling.

In the present case, appellant's conversations with Trooper Elzey demonstrated an intent to procure crack cocaine for him. Her statements that she wanted to smoke the "crack" she gave the trooper demonstrated that she believed the substance to be crack cocaine. The true nature of the substance was immaterial to the offense. It was, therefore, not necessary for the State to prove that the substance appellant gave Trooper Elzey was, in fact, cocaine to establish the conspiracy to distribute cocaine.

Appellant also argues that there was insufficient evidence of an agreement between appellant and Richardson to support a conviction for conspiracy to distribute cocaine. This ground for a judgment of acquittal, however, was not set forth at trial and is therefore not preserved for our review. *Graham v. State,* 325 Md. at 416, 601 A.2d 131; *Pugh,* 103 Md.App. at 650–51, 654 A.2d 888.

## II.

Appellant's Presentence Investigation Report (PSI) disclosed that appellant had a lengthy prior record, including prior criminal convictions. Defense counsel, in reviewing the PSI, noted that it contained several instances of *nolle prosses,*

stets and probations before judgment.[5] He pointed out that the probations before judgment were not convictions. The trial court responded "it certainly isn't a girl scout medal, either." Defense counsel stated, "I agree, Your Honor, but you have to be fair." The following then occurred:

THE COURT: That is fair. When somebody is given a break and then has all these other convictions, and I'm not supposed to regard that? What would you like me to regard it as, a mistake by the judge?

[DEFENSE COUNSEL]: I think you should regard it as nothing, just the same as the Stet is regarded as nothing, just the same as on a number of these other ones, they are nolle prosses. Those are not convictions.

THE COURT: I accept that.

The trial court rejected, however, defense counsel's contention that a probation before judgment was the same as a "not guilty" verdict. The trial court also noted that, without the nolle prosses and stets, appellant had six prior offenses and a "moderate" criminal background.

The State's Attorney urged the trial court to impose upon appellant a fifteen-year term of incarceration. He argued that appellant's record indicated that she "rejects and flaunts any help that the State or the concerns of the government would be willing to offer her." He argued that appellant's record indicated that she had been involved with controlled dangerous substances for a long time and that "this is somebody who doesn't really care about getting a handle on her problems and will break the law in any way she sees fit to keep going."

Prior to imposing sentence, the trial court told appellant:

[A]s I mentioned, you have not only a rather striking prior record, but you have a record of having been given break after break after break. Probations before judgment are indications of people giving you a consideration and a break, and this was done at least twice. You were given a sus-

---

5. The probations before judgment were for battery charges, one in 1983 and one in 1992.

pended sentence on a driving under the influence. I think there are three times when you failed to take the breath test, if my memory serves me correctly, or at least two. There are—or there is, in the matter of the resisting arrest, which is really in my book a rather serious offense, in that it is an offense that strikes at authority and society, when one assaults their representative or resists proper exercise of authority by their representative. The time is simply over, I think, for you to be given any special consideration.

He then sentenced appellant to fifteen years' incarceration. Appellant contends that the trial court erred by considering the fact that she had previously received probations before judgment in determining her sentence. We disagree.

In Maryland, a sentencing judge is vested with almost boundless discretion. *Jennings v. State,* 339 Md. 675, 664 A.2d 903 (1995); *State v. Dopkowski,* 325 Md. 671, 602 A.2d 1185 (1992); *Logan v. State,* 289 Md. 460, 425 A.2d 632 (1981); *Johnson v. State,* 274 Md. 536, 336 A.2d 113 (1975). A defendant's sentence should be individualized "to fit 'the offender and not merely the crime.' " *Smith v. State,* 308 Md. 162, 167, 517 A.2d 1081 (1986) (quoting *Williams v. New York,* 337 U.S. 241, 247, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337 (1949)). Consequently, the defendant's sentence "should be premised upon both the facts and circumstances of the crime itself and the background of the individual convicted of committing the crime." *Jennings,* 339 Md. at 683, 664 A.2d 903; *Dopkowski,* 325 Md. at 679, 602 A.2d 1185 (1992).

The trial court is not limited to a consideration of prior convictions. "To aid the sentencing judge in fairly and intelligently exercising the discretion vested in him, the procedural policy of the State encourages him to consider information concerning the convicted person's reputation, past offenses, health, habits, mental and moral propensities, social background and any other matters that a judge ought to have before him in determining the sentence that should be imposed." *Smith,* 308 Md. at 169, 517 A.2d 1081 (quoting *Bartholomey v. State,* 267 Md. 175, 193, 297 A.2d 696 (1972)).

A trial court may consider uncharged or untried offenses, or even circumstances surrounding an acquittal. *Smith*, 308 Md. at 172, 517 A.2d 1081.

■ The sentencing court's broad discretion does not permit, however, imposition of sentences that are cruel and unusual; violative of constitutional requirements; motivated by ill-will, prejudice, or other impermissible considerations; or that exceed statutory limitations. *Jennings*, 339 Md. at 683, 664 A.2d 903.

■ Appellant concedes that the trial court could consider facts relating to the offenses for which she received probations before judgment, but claims he could not consider the disposition itself without knowing the underlying facts. We believe that the fact that appellant received probation before judgment on previous occasions gave the trial court reliable information relevant to his determination of an appropriate sentence.

Article 27, § 641(a)(1)(i) 1. provides that, when the trial judge deems it appropriate, he may stay the entering of a judgment and place the person on probation subject to reasonable terms and conditions. Section 641(a)(2) provides that the court may not enter a disposition of probation before judgment for a violation of § 21–902 of the Transportation Article if the person has been convicted or placed on probation before judgment within the preceding 5 years. Section 641(c) provides that, upon the fulfillment of the terms and conditions of probation, the court shall discharge the person from probation. The discharge is without a judgment of conviction and is not a conviction for purposes of any disqualification or disability imposed by law because of conviction of a crime.

In *Ogburn v. State*, 71 Md.App. 496, 526 A.2d 614 (1987), we recognized the probative value of the fact of guilt underlying probation before judgment. In that case, we considered whether a theft charge against a witness could be used to impeach his credibility. In concluding that the disposition of probation before judgment did not prevent cross-examination,

we noted that a reasonable basis existed to believe the charge was valid. We explained:

> Since 'the fact of prior misconduct' must be established as a prerequisite to obtaining a probation before judgment disposition, the proffer that a witness has received that disposition for a theft offense necessarily establishes a reasonable basis for the inquiry concerning that offense.

71 Md.App. at 505, 526 A.2d 614. In *Powell v. Maryland Aviation Administration*, 336 Md. 210, 647 A.2d 437 (1994), the Court of Appeals held that nothing in Article 27, § 641 precluded the use of the "guilty finding" as evidence in an administrative proceeding. Similarly, we see nothing in that statute that suggests that the "guilty finding" may not be considered in determining the sentence of a repeat offender.

In fact, we believe that the language of the statute indicates the legislature's intent that such dispositions be considered in subsequent sentencings of an offender. As noted, §§ 641(a)(2)-(4) set forth conditions under which the court may not grant subsequent dispositions of probation before judgment. It necessarily follows that, in those cases, the court must consider previous dispositions under § 641 in determining its sentence. We see no reason to conclude that the legislature believed previous dispositions of probations before judgment were relevant only in those circumstances.[6]

---

6. *But see Conyers v. State*, 345 Md. 525, 693 A.2d 781 (1997). In *Conyers*, the State's Attorney had used juvenile charges, including those not resulting in adjudications of delinquency, to argue in a capital sentencing proceeding before a jury that the defendant had a long history of criminal behavior. The Court held that use of those charges that had not resulted in findings of delinquency was inflammatory and highly prejudicial, and required a new sentencing proceeding. The Court referred to those charges, one of which had been resolved by granting probation without a finding of delinquency, as "mere arrests." Of course, if probations before judgment are "mere arrests," they cannot be used in a non-capital sentencing procedure, either. *Craddock v. State*, 64 Md.App. 269, 494 A.2d 971, *cert. denied*, 304 Md. 297, 498 A.2d 1184 (1985). Nonetheless, we believe that *Conyers* is not controlling here. Article 27, § 413(c)(1)(iii) specifically allows evidence of criminal convictions and pleas of guilty or *nolo contendere* in capital sentencing procedures. We are mindful that probations before judg-

Further, § 641(c) provides that the disposition is not a conviction for purposes of any disqualification or disability imposed by law. It does not purport to bar the use of the disposition in all circumstances.

We also believe that the fact that appellant had received probations before judgment was itself relevant to her rehabilitative prospects and the benefit she might receive from probation or a suspended sentence. We believe the trial court appropriately considered those probations in fashioning a sentence appropriate for appellant.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**

---

ment are not convictions and we are not giving them that effect. Further, the Court in *Conyers*, was concerned with the prejudicial and inflammatory effect of a number of offenses, only one of which was resolved by probation before judgment. The concern in that case is not present here, where the trial judge stated that he did not consider *nolle prosses* or stets, and where there was no jury likely to be enflamed by appellant's record.