No. 1607 September Term, 2015
*Jahtoolie Mulley v. State of Maryland*

## HEADNOTE

**CRIMINAL PROCEDURE - PRE-TRIAL DISCOVERY - REQUIRED DISCLOSURES BY THE PROSECUTION - STATEMENTS MADE BY THE DEFENDANT.**

Maryland Rule 4-263(d) provides: "Without the necessity of a request, the State's Attorney shall provide to the defense: (1) *Statements*. All written and all oral statements of the defendant and of any co-defendant that relate to the offense charged and all material and information, including documents and recordings, that relate to the acquisition of such statements; . . . ." The rule makes no exception for statements containing information known to the defendant. In the present case, because the defendant was charged with an age-based offense, the defendant's oral statement to an arresting police officer in response to a question asking the defendant his age was an oral statement of the defendant that related to the offense charged, and the prosecutor was obligated to provide the statement to the defense during discovery.

## CRIMINAL PROCEDURE - JURY TRIALS - QUESTIONS FROM THE JURY DURING DELIBERATIONS.

When a jury, during deliberations, sends a note asking the trial judge a question that pertains to the action, after the court has invited the parties to respond and considered the parties' responses, in compliance with Maryland Rule 4-326(d)(2)(C), the court's reply to the jury's note is generally committed to the discretion of the trial judge. But, when a jury asks a question that explicitly reflects confusion on an issue that is central to the case, the trial judge must respond to the question in a way that clarifies the confusion. If, however, the jury's question is ambiguous and does not explicitly communicate the issue that is causing difficulty, the trial court shall exercise discretion in the responding to the note.

## CRIMINAL PROCEDURE - EVIDENCE - DEFENDANT'S POSSESSION OF TWO CELL PHONES HELD ADMISSIBLE.

Evidence that the defendant was in possession of two cell phones (but no chargers) at the time of his arrest, and that his companion was in possession of three cell phone chargers (but no cell phones) at the time of arrest, was properly admitted. The evidence had relevance to the prosecution's theory that the two persons were acting in concert and were in joint possession of property; and the trial court did not err in refusing to exclude the evidence on the grounds that its probative value was outweighed by unfair prejudice because jurors might infer that a person in possession of multiple cell phones must be involved in criminal activities.

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1607

September Term, 2015

_____

JAHTOOLIE MULLEY

v.

STATE OF MARYLAND

_____

Meredith,
Leahy,
Moylan, Charles E., Jr.
     (Retired, specially assigned),

JJ.

_____

Opinion by Meredith, J.

_____

Filed: June 2, 2016

At the conclusion of a three-day trial before a jury in the Circuit Court for Baltimore City, Jahtoolie Mulley, appellant, was convicted of five charges relating to being in possession of a firearm, namely: (1) wearing, carrying, or transporting a handgun, in violation of Maryland Code (2002, 2012 Repl. Vol.), Criminal Law Article ("CL"), § 4-203; (2) conspiring with his co-defendant (Tanysha Richardson) to wear, carry, or transport a handgun; (3) possession of a regulated firearm after being convicted of a disqualifying crime, in violation of Maryland Code (2003, 2011 Repl. Vol.), Public Safety Article ("PS"), § 5-133(c); (4) possession of a regulated firearm while being under the age of 21, in violation of PS § 5-133(d); and (5) possession of ammunition by a person prohibited from possessing a regulated firearm, in violation of Maryland Code (2003, 2011 Repl. Vol., 2015 Supp.), Public Safety Article, § 5-133.1.[1]  After sentencing, Mr. Mulley noted this appeal.

## QUESTIONS PRESENTED

Mr. Mulley presents the following questions for our review:

1.      Did the trial judge abuse his discretion when he failed to sufficiently respond to a jury question regarding the State's burden to prove each element of the offense wear, carry, or transport?

2.      Did the trial judge err in finding that the State had not violated Md. Rule 4-263 by failing to disclose Mr. Mulley's statement regarding his birth date?

3.      Did the trial judge err in failing to exclude two cell phones which were irrelevant and highly prejudicial?

4.      Was there insufficient evidence to convict Mr. Mulley [of] possession of ammunition?

---

[1]Section 5-133.1 of the Public Safety Article took effect on October 1, 2013.

We answer Question 2 in the affirmative, and conclude that the court's ruling on the discovery violation was not a harmless error. Consequently, we will vacate the judgment of conviction as to the charge of possessing a regulated firearm while being under the age of 21 (in violation of PS § 5-133(d)), and we will remand the case for further proceedings as to that count only. We answer Questions 1 and 3 in the negative, and conclude that Question 4 was not preserved for our review. We affirm all other judgments of the Circuit Court for Baltimore City.

### FACTS AND PROCEDURAL BACKGROUND

The evidence at trial revealed the following. In the early-morning hours of September 4, 2014, four Baltimore City police detectives assigned to the Eastern District were detailed to the Northwest District, in the area of the 4900 block of Park Heights Avenue, "in response to two homicides that had just taken place within a short [period of time] between each other." The four detectives were in an unmarked vehicle, and dressed in plain clothes, although each was wearing a tactical vest on which the word "Police" appeared. As the detectives were driving northbound on Park Heights Avenue toward the scene of the homicides, they passed Mr. Mulley and his co-defendant, Ms. Richardson, who were walking northbound.

Det. Sgt. John Burns, who was sitting in the back seat of the police car behind the driver, testified that, as the police car passed Mr. Mulley and Ms. Richardson, he observed "a slight hesitation in their walk," and he saw Mr. Mulley place a dark object inside Ms.

2

Richardson's purse, which object Mr. Mulley appeared to push down inside the purse. The detectives continued to travel on Park Heights Avenue a short distance, and then stopped for "[t]wo minutes, maybe" to provide backup for other officers at that location. While Det. Sgt. Burns and the other three officers were at the location where they were providing backup support, Mr. Mulley and Ms. Richardson walked past the group of detectives, and the couple's demeanor caught the attention of the detectives again. Det. Sgt. Burns testified at trial:

> [BY DET. SGT. BURNS]: Mr. Mulley and Ms. Richardson, they were walking northbound, actually they were walking right past us, he had his arm around her and they were walking like almost in a robotic fashion. They weren't making eye contact with the police, they didn't look at us, they were just strictly like [*sic*] and Mr. Mulley appeared very nervous. It was just they were very rigid and walking, arm around her and he was like focused straight ahead and they actually walked right past us.

Because the operation for which the four detectives had been sent to assist was wrapping up, the detectives got back in their unmarked vehicle and caught up with Mr. Mulley and Ms. Richardson near the intersection of Park Heights Avenue and Spaulding Avenue. Detective Moore, the driver, pulled the car over and asked Mr. Mulley and Ms. Richardson if they could speak with them for a moment. Det. Sgt. Burns began speaking with Mr. Mulley, and Detective Peter Iacovo approached Ms. Richardson.

Det. Iacovo testified that, when the group of detectives stopped Mr. Mulley and Ms. Richardson, he asked Ms. Richardson if she had any identification. As Ms. Richardson opened her purse, Det. Iacovo spotted what he "believed to be the cylinder of a revolver,"

3

and he then grabbed the purse. The purse contained a handgun that was loaded with six rounds of ammunition, and a plastic bag containing eleven more bullets capable of being fired from that gun.

Det. Iacovo testified regarding a statement blurted out by Mr. Mulley, who claimed "it's mine":

> [BY DET. IACOVO]:  . . . [A]s soon as I saw the cylinder, I knew based on just my experience through law enforcement as well as the military, I knew that to be a cylinder for a revolver handgun.
>
> [BY THE STATE]:  And after you made that observation again, what did you do?
>
> A.    I immediately grabbed the purse from Ms. Richardson and I opened [it] up to confirm what I initially observed, and then at which point I handed it off to Detective Moore who was standing right next to me and I advised Ms. Richardson to turn around so I could place her in handcuffs and I said 30, I blurted 30 to the other officers involved to inform them that Ms. Richardson was being placed under arrest.
>
> Q.    And when you said that, what if anything happened?
>
> A.    Well, **as soon as I was placing the cuffs on Ms. Richardson**, and I said, well, I said 30, and I alerted to them, **Mr. Mulley made a statement**.
>
> Q.    **And what did he say?**
>
> A.    He said, do you want me to say it verbatim, do you want me to read it verbatim?
>
> Q.    Yes.
>
> A.    All right.  **Mr. Mulley stated, "Yo, it's mine, yo, she just my little sister, for real."**

4

Q.     **And when Mr. Mulley made that statement, what did you understand him to be speaking of?**

A.     **I took it as he was taking ownership of the weapon that was within the bag.**

Neither Mr. Mulley nor Ms. Richardson testified at trial.  Both were convicted of all charges that remained pending against them at the close of trial.[2]

## DISCUSSION

### I.  Responses to a question from the jury

The first issue Mr. Mulley presents on appeal arose during jury deliberations. With respect to the instructions that are the subject of Mr. Mulley's appellate challenge, the court initially instructed the jury as follows:

> [BY THE COURT]:  . . . Each of the Defendants is charged with wear, carrying, or transport of a handgun.  It is question number one on each of the verdict sheets. In order to convict the Defendant, the State must prove the following: One, that the Defendant wore, carried or transported a handgun, that it was within his or her reach and available for his or her immediate use, secondly — let me give you the definition of a handgun.
>
> But first, before I give you the definition of a handgun, let me tell you what possession means.  Possession means having control over a thing, whether actual or indirect.  The Defendant does not have to be the only person in possession of the item.  More than one person may have possession of the same item at the same time.  A person not in actual possession who knowingly

---

[2]Mr. Mulley had been charged with six gun-related crimes, but, at the conclusion of the State's case, the prosecution nol prossed a charge of illegal possession of a regulated firearm in violation of PS § 5-133(b).

had both the power and the intention to exercise control over a thing, either personally or through another person, has indirect possession.

In determining whether the Defendant had indirect possession of the item, consider all of the surrounding circumstances and these circumstances include the distance between the Defendant and the item, whether the Defendant had some ownership or possessory interest in the place where the item was found, and any indication that the Defendant was participating with others in the mutual use and enjoyment of the item. That's what possession means.

Now let me tell you what a handgun is. A handgun is a pistol, a revolver or other firearm capable of being concealed on or about the person and which is designed to fire a bullet by the explosion of gunpowder.

Using that definition of possession and that definition of a handgun, you will answer question number one as to each Defendant by entering your verdict in the appropriate space. Then go on to question number two.

Within an hour of being released to deliberate, the jury sent out a note, asking: "Can you explain number one, did wear, carry or transport a handgun, a little clearer please." As required by Maryland Rule 4-326(d)(2)(C), the court discussed the note with counsel.[3] Mr.

---

[3]Maryland Rule 4-326(d)(2) provides:

(2) *Notification of Judge; Duty of Judge.*

(A) A court official or employee who receives any written or oral communication from the jury or a juror shall immediately notify the presiding judge of the communication.

(B) The judge shall determine whether the communication pertains to the action. If the judge determines that the communication does not pertain to the action, the judge may respond as he or she deems appropriate.

(continued...)

6

Mulley's counsel suggested that the court re-read the relevant portions of the instruction it had previously read to the jury — *i.e.*, Maryland Pattern Jury Instructions-Criminal ("MPJI-Cr") 4:35.2 — and the State and Ms. Richardson's counsel agreed. The court brought the jury into the courtroom, and re-read them the instruction. The court closed by asking the jury: "[I]s that clear?" There were no apparent responses, and the jury was discharged to continue its deliberations. However, the jury was eventually released for the day without reaching a verdict.

The next day's transcript begins in the middle of a discussion about another note that had been sent out by the jury. This note contained the following questions:

1.  [Question scratched out by jury]

2.  define intention to exercise control under indirect possession?

3.  define on or about the person

4.  does access to the bag equate to possession of bag's content?

5.  does State have to prove each element of "wear, carry or transport?"

---

[3](...continued)
**Committee note**: Whether a communication pertains to the action is defined by case law. *See*, for example, *Harris v. State*, 428 Md. 700[, 711-12] (2012) and *Grade v. State*, 431 Md. 85[, 99-100] (2013).

> (C) If the judge determines that the communication pertains to the action, the judge shall promptly, and before responding to the communication, direct that the parties be notified of the communication and invite and consider, on the record, the parties' position on any response. The judge may respond to the communication in writing or orally in open court on the record.

6. define available for <u>immediate use</u>?

The jury's question 5 — "does State have to prove each element of 'wear, carry, or transport?'" — is the basis of Mr. Mulley's first issue on appeal.

The discussion among court and counsel reflects that the State and the trial judge were of the opinion that the jury was asking whether the State had to prove that the defendants wore **and** carried **and** transported a handgun. Mr. Mulley's counsel, on the other hand, urged the court to construe the question as asking whether the State had to prove each element of the wear, carry or transport offense, and, because Mr. Mulley's counsel contended that was the correct understanding of the question, he urged the court to answer the question "yes." The court concluded that the best solution would be to provide the jury with a copy of the instructions the court had previously provided orally. The court stated: "[W]hat I think I'm going to do is to . . . copy that portion of the instruction that I read and give it to them." The following colloquy between Mr. Mulley's counsel and the court ensued:

> [BY APPELLANT'S COUNSEL]  Your Honor, I just wanna make, have the record clear that **Mr. Mulley doesn't have an objection to** [a printed copy of the pattern instructions defining the offense and possession] **going back** . . . **but with respect to question number five,** does the State have to prove each element of wear, carry or transport, Mr. Mulley is charged with that exact, that very offense, wear, carry or transport a handgun.  . . . **[T]he question in my opinion is, is very clear that they're asking does the State have to prove each of the elements of the offense that Mr. – one of the offenses that Mr. Mulley is charged and I think the correct response is yes**, that the State does have to prove —
>
> [BY THE COURT]  Yeah, and that's why, what the instruction will tell them. The instruction is clear that it is carry, wore, carried, **or** transported.

8

[APPELLANT'S COUNSEL] But the question asked, does the State have to prove each of the elements. I don't think — the question as to one —

[COURT] What does wore, carry or transported mean to them?

[APPELLANT'S COUNSEL] But it's, but what the, the information that they're being supplied with is a definition of the elements. **What they're asking is does the State have — they're not asking what the elements are. They're asking does the State have the** —

[COURT] Prove all of them.

[APPELLANT'S COUNSEL] **— burden of proving all of the elements and I** —

[COURT] Yes.

[APPELLANT'S COUNSEL] **— think that the Court should inform them that, yes, the State does have to prove** —

[COURT] No, they don't.

[APPELLANT'S COUNSEL] **— all of the elements**.

[COURT] That's the problem. No. **You can prove wear, you can prove carry or you can prove transport. You do not have to prove wear, carry *and* transport.** So that's the reason —

[APPELLANT'S COUNSEL] But they're not asking do we have to prove, prove wear, carry and transport. They're asking do we have to prove wear, carry or transport. So, I mean, we're, we're presuming —

[COURT] No, no, no, no —

[APPELLANT'S COUNSEL] — that they don't understand the language of the statute.

[COURT] Give me that, those, that question back again. **The question reads, does the State have to prove each element of, not each element of the**

9

**offense, each element of wear, carry or transport. That's what they're asking.**

[APPELLANT'S COUNSEL] Well, the offense is wear, carry or transport. I mean, that — they've used the exact language —

[COURT] All right.

[APPELLANT'S COUNSEL] — of the charge.

[COURT] I disagree with you, although I have no problem telling them no. However, this is a two-Defendant case, and unless both Defendants agree that I should tell them no, I will not do it.

[APPELLANT'S COUNSEL] I'm asking the Court to tell them yes.

[COURT] I mean or tell them yes. And since — they don't. No, wait a minute. Why should I? **It is not wear, carry and transport. It's wear, carry or transport. You don't have to prove wear, carry and transport.**

[APPELLANT'S COUNSEL] And that's not what they're asking, Your Honor. They're asking —

[COURT] Okay. I disagree with you.

[APPELLANT'S COUNSEL] Thank you.

[COURT] All right. I will not tell them yes, because then I will be answering — well, first of all, both Defendants have indicated they want me to tell them yes. I don't have any problem — but yes is the wrong answer anyway. I will tell them no.

[APPELLANT'S COUNSEL] Thank you, Your Honor.

[COURT] **Do you want me to tell them yes? It doesn't matter. I'm not going to do it. . . . The answer is no, and if — and I don't want to tell them no. I'll give them the [written] instruction. They come back with another question about do they still have to prove wear, carry and transport, I will tell them no. But under no circumstances will I tell them yes.**

(Emphasis added.)

The court provided the jury with written excerpts of jury instructions that it had initially read. The jury did not send the court any further questions, and reached a verdict approximately 90 minutes later.

On appeal, Mr. Mulley contends that the trial court abused its discretion by "provid[ing] an unhelpful response" to the jury's second note. Mr. Mulley asserts that the court "failed to clearly answer **the ambiguous jury question about the State's burden of proof** for the wear, carry, or transport charge," and "[a]t a minimum . . . had to make explicitly clear the fundamental principle that the State must prove beyond a reasonable doubt every single element." (Emphasis added.) We disagree that the court's decision to respond to the note by providing written excerpts of the pattern jury instructions constituted an abuse of discretion.

In *Brogden v. State*, 384 Md. 631 (2005), the Court of Appeals observed that "a question of '[w]hether to give a jury supplemental instructions in a criminal cause is within the discretion of the trial judge.'" *Id.* at 640 (quoting *Lovell v. State*, 347 Md. 623, 657 (1997)). *See also Carroll v. State*, 428 Md. 679, 689 (2012) ("We apply an abuse of discretion standard to the court's decision not to give a requested instruction, yet we will not hesitate to reverse a conviction if we conclude that 'the defendant's rights were not adequately protected.'" (quoting *Cost v. State*, 417 Md. 360, 369 (2010)).

The Court of Appeals commented in *Appraicio v. State*, 431 Md. 42, 44 (2013): "Trial judges walk a fine line when answering questions posed by jurors during the course of their deliberations. Any answer given must accurately state the law and be responsive to jurors' questions without invading the province of the jury to decide the case." In *Cruz v. State*, 407 Md. 202, 210 (2009), the Court of Appeals discussed the discretion that trial judges have with respect to providing juries supplemental jury instructions, stating:

> Trial courts have discretion in deciding whether to give a jury supplemental instructions in a criminal cause. *Lovell v. State*, 347 Md. 623, 657, 702 A.2d 261, 278 (1997). This discretion, of course, is not boundless. We have held that trial courts "must respond to a question from a deliberating jury in a way that clarifies the confusion evidenced by the query when the question involves an issue central to the case." *State v. Baby*, 404 Md. 220, 263, 946 A.2d 463, 488 (2008)(discussing *Lovell*, 347 Md. at 623, 658–60, 702 A.2d at 261, 278–79).

We have similarly observed that, "when a jury asks a question that reflects confusion on an issue, the trial judge 'must respond' to the question 'in a way that clarifies the confusion' if 'the question involves an issue central to the case.'" *Lee v. State*, 186 Md. App. 631, 665 (2009), *rev'd on other grounds*, 418 Md. 136 (2011) (quoting *State v. Baby*, 404 Md. 220, 263 (2008), and citing *Lovell*, 347 Md. at 658-59). In addition, we have also explained that, although the trial court's response must not be "ambiguous, misleading, or confusing to the jurors," *see Oliver v. State*, 53 Md. App. 490, 505 (1983) (citing *Battle v. State*, 287 Md. 675, 685 (1980)), the appropriate response to a jury question is dependent upon many factors:

12

Clearly, the person in the best position to weigh these "facts and circumstances" is the trial judge. From his vantage point he has the opportunity to surmise which of the phrases in his instructions have been absorbed and which should be embellished or repeated.

*Oliver*, 53 Md. App. at 505 (quoting *Kelly v. State*, 270 Md. 139, 143 (1973)).

Mr. Mulley contends that the jury's questions in this case reflected confusion regarding "the State's burden of proof" with respect to each of the elements of the offense of wearing, carrying or transporting a handgun, and the trial court's repetition of previously given instructions did nothing to clarify the confusion as required by *State v. Baby*, 404 Md. 220 (2008). Mr. Mulley urges us to hold, as the Court of Appeals did in *Baby*, that the trial court committed reversible error in "failing to more specifically instruct the jury" in response to the jury's questions. We do not agree that *Baby* required the trial judge in the present case to provide a different response to the jury's note.

*Baby* was a rape case, and the trial court "instructed the jury on the elements of first degree rape, using language substantively similar to that in the pattern jury instructions." 404 Md. at 233 (footnote omitted). The jury later sent out a note, asking whether a female who has initially consented to engage in sex may effectively withdraw her consent after the sex act has begun, or whether consent to sex, once given, compels a finding that continuation of the act after consent has been withdrawn does not constitute rape. The trial court discussed the note with counsel, and eventually replied to the jury that it should re-read the instructions that had previously been given, which included the definition of consent. The next morning, the jury sent out another note, asking: "If at any time the woman says stop[,] is that rape?" After discussing the note with counsel, the court instructed the jury: "This is a question that

13

you as a jury must decide.  I have given the legal definition of rape which includes the definition of consent." 404 Md. at 235.

This Court ruled that the trial judge erred by failing to answer the jury's question with a clear "no," 172 Md. App. 588, 621, and, although the Court of Appeals disagreed with that answer, the Court of Appeals agreed that the jury's questions warranted supplemental instructions and the trial court committed reversible error in failing to provide a helpful response.

The Court of Appeals stated in *Baby* that the threshold issue for determining when a supplemental clarifying response is required is this: "**The question before us**, then, **is whether the jury's questions made explicit its difficulty with an issue central to the case** such that the trial court was required to respond to the questions in a manner that directly addressed the difficulty." 404 Md. at 263 (emphasis added).  In *Baby*, the jury's multiple notes explicitly apprised the court and counsel that the jury was asking for clarification about the legal impact of a withdrawal of consent during an act of sexual intercourse, and that was a critical point of law not covered by any of the court's instructions. The *Baby* Court noted that, in *Lovell, supra*, 347 Md. at 623, it had held "that a trial court must respond to a question from a deliberating jury in a way that clarifies the confusion evidenced by the query when the question involves an issue central to the case." *Baby*, 404 Md. at 263. The jury's questions about the legal implication of a withdrawal of consent after the sex act was in progress were never addressed, let alone satisfactorily answered, by any of the instructions provided by the court. Under those circumstances, the Court of Appeals held in *Baby* that the

14

trial court's response to the jury's notes was inadequate: simply "[r]eferring the jury to the legal definition of rape that the court had previously provided was not sufficient to address either of the jury's questions as the definition makes no reference to the issue of post-penetration withdrawal of consent which was central to the jury's questions." 404 Md. at 263-64.

In Mr. Mulley's case, the jury's questions regarding the charge of wearing, carrying, or transporting a handgun generated disagreement among the trial judge and counsel regarding the specific issue that was giving the jury difficulty. The trial judge and prosecutor were of the opinion that the jury was questioning whether the State was required to prove all three modalities of violating the statute (*i.e.*, wearing, carrying, and transporting). Mr. Mulley's counsel expressed the opinion that the jury was not asking about proving all three modalities, but was asking "does the State have the burden of proving all of the elements."

In contrast to the jury notes in *Baby*, the questions the jury asked in this case did not make explicit that it was having difficulty with the question of whether the State was required to prove each element of the offense beyond a reasonable doubt. Accordingly, unlike the questions in *Baby* that required a response to a specific point of confusion, the jury's note in the present case did not explicitly apprise the court that the jury's difficulty with the court's instructions was the one suggested by Mr. Mulley's counsel. Indeed, the jury's note made no mention of "burden of proof." The trial judge's interpretation of the jury's question was a reasonable one, and the court's response — providing the pertinent pattern instructions in writing for the first time — was also a reasonable one. It was not unreasonable for the judge

to expect that, if the focus of the jury's question was in fact the issue suggested by Mr. Mulley's counsel, the jury would send another note. In short, the trial judge's response to the note was not an abuse of discretion.

Our conclusion that the trial court did not err in deciding to respond to the note by providing the jury a written copy of its instructions is supported by *Jefferson v. State*, 194 Md. App. 190 (2010). *Jefferson* was a case in which one of the charges was the crime involved here: wearing, carrying, or transporting a handgun. During deliberations, the *Jefferson* jury sent a note that posed the following question:

> 1. Wear, carry, and transport a handgun. "3 items." Not wear, carry, or transport
>      Clarify please, we are having difficulty with the terminology. **Does it have to be all 3? Can a passenger transport?**

194 Md. App. at 202 (emphasis added).

The *Jefferson* jury also asked for a copy of the wear, carry or transport statute, CL § 4-203, which the court provided them. After Jefferson's conviction, he appealed, and argued that the trial court erred in giving the jury a copy of the statute at issue. But we held that there was no abuse of discretion, and explained that providing the jury with a written copy of the pertinent statute "was no different than providing a written copy of an oral jury instruction [as] permitted by Rule 4-326(b)." *Id.* at 210. Rule 4-326(b) provides that "oral instructions reduced to writing may be taken into the jury room only with the permission of the court."

Unlike the situation in *Baby*, the jury in this case did not communicate to the court an unambiguous question of law that the trial judge refused to clarify. In the instant case, a

16

correct answer to the jury's question (as the trial court interpreted the question) was contained within the court's supplemental instruction. And, although Mr. Mulley contends that the trial judge's interpretation of the jury's question was possibly the incorrect reading, the lack of any further inquiry from the jury supports our conclusion that the jury's confusion was satisfactorily resolved by the court's response.

## II.    Appellant's birth date: a discoverable statement

Prior to trial, Mr. Mulley filed an omnibus "request for discovery and motion to produce documents," requesting, *inter alia*, that the State furnish "the substance of each oral statement made by the Defendant to a State agent which the State intends to use at trial." One of the charges levied against Mr. Mulley was that he was in possession of a regulated firearm while being under the age of 21 in violation of PS § 5-133(d).  Mr. Mulley did not testify at trial, and there was no stipulation as to his age.  When, at trial, the State attempted to move into evidence a copy of Mr. Mulley's birth certificate that had not been provided to the defense until the morning of trial and did not contain any certification of authenticity as contemplated by Maryland Rule 5-902(a), the court sustained Mr. Mulley's objection.

The State thereafter recalled Det. Iacovo to the stand, and he testified, over Mr. Mulley's objection, that, when he was processing Mr. Mulley for transport via police wagon from the scene of Mr. Mulley's arrest, he asked Mr. Mulley his date of birth and Mr. Mulley provided it.  Mr. Mulley objected to Det. Iacovo's testimony about his age, arguing that the State had committed a discovery violation by failing to turn over Mr. Mulley's statement about his date of birth.  The State countered that there was no discovery violation because

17

a defendant's date of birth is routine booking information, not a discoverable statement. The court overruled Mr. Mulley's objection, and the jury heard from Det. Iacovo that Mr. Mulley had provided his date of birth at the time of the arrest. This testimony from Det. Iacovo was the only evidence to establish that Mr. Mulley was under the age of 21 at the time of his arrest.

Mr. Mulley contends in this appeal that any statement he made to Det. Iacovo about his date of birth was an oral statement that related to the age-based firearm offense; that it was the only evidence establishing an element of a crime with which Mr. Mulley had been charged; that the State was obligated to turn it over in discovery and had not done so; that the failure to turn over the statement was a discovery violation; and that the circuit court erred in finding that there was no discovery violation and in failing to craft a remedy. We agree with appellant on this issue.

Although the parties devote part of their briefs to an analysis of whether the questions that were asked of Mr. Mulley before he was transported to the station were routine booking questions, we need not grapple with that issue because it is not material to our resolution of the discovery issue. *See generally Hughes v. State*, 346 Md. 80, 94-96 (1997) ("We agree that certain routine questions asked during the booking process are ordinarily exempt from the requirements of *Miranda*.").

The discovery requirements are applicable to oral statements even if the statements have been properly obtained. Maryland Rule 4-263(d)(1) expressly provides:

**(d) Disclosure by the State's Attorney.**

Without the necessity of a request, the State's Attorney shall provide to the defense:

(1) *Statements*. All written and all oral statements of the defendant and of any co-defendant that relate to the offense charged and all material and information, including documents and recordings, that relate to the acquisition of such statements; . . . .

In this case, *because Mr. Mulley was charged with an age-based firearms offense*, his statement to Det. Iacovo regarding his age clearly fell within the category of "all oral statements of the defendant . . . that relate to the offense charged," and was therefore information the prosecutor was obligated to provide to the defense within the time limits established by Rule 4-263(h) without the necessity of a request.

The State does not dispute that it failed to make a timely disclosure of this information, but argues that the failure to disclose the statement "did not hamper [Mr. Mulley's] defense, nor could he have been surprised by the revelation of his own date of birth." But the discovery rules do not carve out an exception for facts known to the defendant. The defendant would obviously have knowledge of any statements that he had made, but Rule 4-263(d)(1) nevertheless mandates that the State's Attorney provide discovery of all such statements. And Rule 4-263(d)(9) requires the prosecutor to provide the defense "[t]he opportunity to inspect, copy, and photograph all documents, . . . or other tangible things that the State's Attorney intends to use at a hearing or at trial," again without regard to whether the defense already has knowledge of, or copies of, those items.

19

Here, the court's error in admitting the testimony of Det. Iacovo without regard to the discovery violation was not harmless because the State introduced no other evidence of Mr. Mulley's age at the time of arrest. Consequently, we will vacate the conviction on the charge of possession of a regulated firearm by a person under the age of 21 pursuant to PS § 5-133(d), and remand the case to the circuit court for further proceedings on that count.

### III.   The two cell phones

When Mr. Mulley was arrested, the police recovered two cell phones from Mr. Mulley's pants pocket.  Ownership of the phones was never established.  From Ms. Richardson's purse, police recovered three cell phone chargers, but no cell phone.  The cell phones and chargers were admitted in evidence over defense counsel's objections. The State argued in closing, with respect to the conspiracy charges, that the phones-without-chargers from Mr. Mulley's pockets, and the chargers-without-phones from Ms. Richardson's purse, when considered together, supported a finding that the pair were acting in concert and were in joint possession of shared items.  Mr. Mulley argued to the trial court, and again argues on appeal, that the cell phones should not have been admitted into evidence because they were "irrelevant and highly prejudicial."  Mr. Mulley asserts that the trial court violated both Rule 5-402 and Rule 5-403 in admitting the phones.[4]

[4]Maryland Rule 5-402 provides:

Except as otherwise provided by constitutions, statutes, or these rules, or by decisional law not inconsistent with these rules, all relevant evidence is admissible.  Evidence that is not relevant is not admissible.

Maryland Rule 5-403 provides:

(continued...)

20

The admission of evidence is generally a matter committed to the discretion of the trial court, although that discretion is not entirely unfettered. A court does not have discretion to admit irrelevant evidence. Rule 5-402. But the State argues that the cell phones were relevant and admissible because "[a]ny link between Richardson and Mr. Mulley, including the fact that Mr. Mulley had two cell phones, one of which was pink, was relevant to the conspiracy charge." Mr. Mulley points out that no forensic evidence was introduced regarding ownership or usage of the phones, and he argues that the cell phones were not only irrelevant, but also unfairly prejudicial to him, because of an "association," which he claims is "well known to the public," "between having multiple cell phones and the drug trade[.]" But there was no testimony to support defense counsel's argument that evidence of a person carrying two phones is indicative of illegal participation in the drug trade.

Furthermore, the record reveals that, during the following colloquy, the trial judge instructed the State that it could not ask the officer whether people who sell drugs carry more than one phone:

> [BY APPELLANT'S COUNSEL]: Your Honor, I can proffer to the Court that the only thing recovered from Mr. Mulley was his two cell phones. And there's no evidentiary value whatsoever for letting [the State] ask the officer about that, except for to imply to the jury that maybe Mr. Mulley was selling drugs or something untoward.
>
> [BY THE COURT]: I don't know that that's an implication simply —

---

[4](...continued)

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

[APPELLANT'S COUNSEL] Well, I —

[COURT] I carry a cell phone. I don't —

[APPELLANT'S COUNSEL] Not two cell phones.

[COURT] — sell drugs. He carried —

[APPELLANT'S COUNSEL] Two cell phones.

[BY THE STATE] And —

[COURT] No. You've got one, two, it doesn't matter.

[APPELLANT'S COUNSEL] What's the — how is that at all probative?

[COURT] I think the innuendo that you're making by the possession of cell phones is one that you made. I don't agree with it. But I['ll] tell [the State], you can't ask him whether — if people [who] sell drugs carr[y] more than —

[BY THE STATE] No, Your Honor. I don't —

[COURT] — one cell phone.

[BY THE STATE] — intend to and I —

[COURT] But if they took a cell phone from him, they took a cell phone. They took two, they took two.

In closing arguments, the State did not argue that possession of more than one cell

phone indicates a person is involved in the drug trade. Rather, the State argued in closing:

> [BY THE STATE]: Now, let's talk about the search of Mr. Mulley because what does it recover? Two cell phones. **What are [sic] the significance of these two cell phones to this case? Well, what's recovered from Ms. Richardson's purse, one, two, three cell phone chargers. No cell phone, but three chargers, chargers that fit the cell phones that are on Mr. Mulley's person, because the two of them are together.**
>
> **Ms. Richardson was holding Mr. Mulley's items, his cell phone chargers, his gun. Did each of them possess them? They absolutely did.**

22

Again, I mean, obviously, it's in her purse. She had control of it, but it's in his hand. So did he.

(Emphasis added.)

In Mr. Mulley's closing, defense counsel assailed the lack of thoroughness of the police investigation, pointing specifically to the absence of evidence regarding ownership of the phones:

> [BY APPELLANT'S COUNSEL]: The, the cell phones. He recovers cell phones from Mr. Mulley. There's three chargers in the purse. There's two cell phones. All right, they don't match up but it's close enough. We're not even gonna investigate the phones, so we're not gonna find out who the carrier is. We're not gonna find out who the owner of these phones [is]. We're not gonna send 'em for fingerprint analysis. Just, ya know, look, trust us. This proves that they're together. That's a complete red herring.

In the State's closing rebuttal argument, the prosecutor made the following remarks regarding the phones:

> [BY THE STATE]: Now, there's this argument that, well, you didn't fingerprint the phones, you didn't do an analysis of the phones. The testimony I heard was the phones came from Jahtoolie Mulley's pants pocket. Now, maybe it's just I'm too much of a realist. This is my pen. I put down the pen. Someone comes in and says, hey, guys, do you guys know whose pen this is? Which one of you is gonna be like, well, we need some fingerprints? Nobody, right? You're gonna be like, well, I saw [the prosecutor] put it down, it must be her pen. Some phones come out of your pocket, they're your phones.

In our view, the court did not err in concluding that the phones were admissible pursuant to Rule 5-402, and did not abuse its discretion in declining to keep the phones out of evidence pursuant to Rule 5-403. It was an uncontroverted fact that two phones were found in Mr. Mulley's pocket. The phones were not contraband. The evidence regarding the phones in Mr. Mulley's pocket and the chargers (but no phones) in Ms. Richardson's purse

23

tended to support the State's theory that the two defendants were acting in concert in transporting the weapon and ammunition. The probative value of the evidence was not "'substantially outweighed by the risk of unfair prejudice.'" *Cousar v. State*, 198 Md. App. 486, 516 (2011) (quoting LYNN MCLAIN, MARYLAND RULES OF EVIDENCE 66 (Thomson/West ed., 2007)). Drugs were not mentioned in the prosecutor's closing argument, and appellant's assertion that persons who carry two phones are probably drug dealers is not such a widely held assumption that the trial court erred in failing to find unfair prejudice.

## IV. Sufficiency of the evidence

Mr. Mulley's final contention is that the evidence was not sufficient to convict him of the possession of ammunition found in Ms. Richardson's purse. However, this particular argument was not made at trial, and therefore, has not been preserved for our review.

Maryland Rule 4-324 provides, in pertinent part:

A defendant may move for judgment of acquittal on one or more counts, or on one or more degrees of an offense which by law is divided into degrees, at the close of the evidence offered by the State and, in a jury trial, at the close of all the evidence. **The defendant shall state with particularity all reasons why the motion should be granted**.

(Emphasis added.)

A large number of appellate opinions in this State have consistently emphasized the requirement that alleged deficiencies in the evidence must be pointed out "with particularity" at the time of trial in order to preserve for appellate review a challenge to the sufficiency of the evidence. "[A] motion which merely asserts that evidence is insufficient to support a conviction, without specifying the deficiency, does not comply with Rule 4–324 and thus

does not preserve the issue of sufficiency for appellate review." *Johnson v. State*, 90 Md.

App. 638, 649 (1992) (citing *Brooks v. State*, 68 Md. App. 604 (1986)).

In *Hobby v. State*, 436 Md. 526, 539-40 (2014), the Court of Appeals noted:

> Maryland Rule 4–324(a), concerning motions for judgment of acquittal, provides, in pertinent part: "The defendant shall state with particularity all reasons why the motion should be granted." "**Under [Maryland] Rule 4–324(a), a defendant is . . . required to argue precisely the ways in which the evidence should be found wanting and the particular elements of the crime as to which the evidence is deficient.**" *Montgomery v. State*, 206 Md. App. 357, 385, 47 A.3d 1140, 1157, *cert. denied*, 429 Md. 83, 54 A.3d 761 (2012) (alteration and omission in original) (internal quotation marks omitted) (quoting *Fraidin v. State*, 85 Md. App. 231, 244–45, 583 A.2d 1065, 1072, *cert. denied*, 322 Md. 614, 589 A.2d 57 (1991)). And, " [t]he language of **the rule is mandatory**." *State v. Lyles*, 308 Md. 129, 135, 517 A.2d 761, 764 (1986).
>
> * * *
>
> On appeal from a jury trial,
>
> **appellate review of sufficiency of evidence is available only when the defendant moves for judgment of acquittal at the close of all the evidence <u>and argues precisely the ways in which the evidence is lacking</u>**. The issue of sufficiency of the evidence is not preserved when [the defendant]'s motion for judgment of acquittal is on a ground different than that set forth on appeal.

*Anthony v. State*, 117 Md. App. 119, 126, 699 A.2d 505, 508, *cert. denied*, 348 Md. 205, 703 A.2d 147 (1997) (citations omitted). Thus, "[a] defendant may not argue in the trial court that the evidence was insufficient for one reason, then urge a different reason for the insufficiency on appeal in challenging the denial of a motion for judgment of acquittal." *Tetso v. State*, 205 Md. App. 334, 384, 45 A.3d 788, 817, *cert. denied*, 428 Md. 545, 52 A.3d 979 (2012) (citation omitted).

(Emphasis added.)

At trial, Mr. Mulley made the following motion for judgment at the close of the State's case:

> [BY APPELLANT'S COUNSEL]: I'd make a motion for judgment [of] acquittal on behalf of Mr. Mulley, Your Honor, as to all counts. Specifically with count three, possession of a firearm by a, a minor under 21, **I don't think the State has met its burden as to any of the counts with respect to Mr. Mulley. The only evidence that's been offered against him with respect to any of the counts is conflicting testimony from, from some police officers. No physical evidence whatsoever, no evidence of any relationship or agreement or association whatsoever between Mr. Mulley and Ms. Richardson. And for all those reasons, that's — we'd ask the Court to enter a judgment of acquittal for all of the counts**.

(Emphasis added.)

The trial court denied the motion. Mr. Mulley simply renewed the motion at the close of the entire case, without adding any particularity to the reasons quoted above, stating: "We do move for judgment of acquittal as to all counts for Mr. Mulley and I'll just incorporate by reference the argument that I made at the conclusion of the State's case. There's been no additional evidence presented and we'll submit."

On appeal, Mr. Mulley's argument focuses exclusively on the evidence to support the conviction for possession of ammunition. He now contends: "The State failed to produce evidence that Mr. Mulley had direct possession of the ammunition found in the co-defendant's purse," and he further argues that the ammunition that was found in the gun does not support a conviction on the possession of ammunition charge. But, in defense counsel's arguments at trial, ammunition was not even mentioned when Mr. Mulley moved for judgment of acquittal. Mr. Mulley failed to argue at trial "precisely the ways in which the evidence [as to the ammunition] was lacking," *Anthony v. State*, 117 Md. App. 119, 126

26

(1997), and consequently, we agree with the State's contention that he did not preserve this argument for our review.

**JUDGMENT OF CONVICTION FOR POSSESSING A REGULATED FIREARM WHILE UNDER THE AGE OF 21 IN VIOLATION OF PS § 5-133(D) VACATED, AND CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR FURTHER PROCEEDINGS ON THAT CHARGE ONLY; ALL OTHER JUDGMENTS OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID ONE-FOURTH BY MAYOR AND COUNCIL OF BALTIMORE CITY, AND THREE-FOURTHS BY APPELLANT.**