J-S43030-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| SAMANTHA JO DELCAMP | : | |
| | : | |
| Appellant | : | No. 81 MDA 2023 |

Appeal from the Judgment of Sentence Entered September 2, 2022
In the Court of Common Pleas of Northumberland
County Criminal Division at No(s):  CP-49-CR-0001914-2019

BEFORE:   McLAUGHLIN, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY KING, J.:                          **FILED: JULY 26, 2024**

Appellant, Samantha Jo Delcamp, appeals from the judgment of sentence entered in the Northumberland County Court of Common Pleas, following her jury trial convictions for two counts of aggravated assault and one count each of involuntary manslaughter, endangering the welfare of children ("EWOC"), simple assault, recklessly endangering another person ("REAP"), obstruction in child abuse cases, hindering apprehension or prosecution, false reports, and harassment.[1]  We affirm.

In its opinion, the trial court fully and correctly sets forth the relevant facts and procedural history of this case.  (**See** Trial Court Opinion, filed

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2702(a), 2504(a), 4304(a), 2701(a), 2705, 4958(b.1), 5105(a), 4906(b), and 2709(a), respectively.

3/20/23, at 1-3). Therefore, we will only briefly summarize the relevant facts here. On October 10, 2019, Appellant's paramour, Jahrid Burgess, picked up Appellant's three-year-old daughter by the throat, held her against the wall, and threw the child. Appellant's daughter hit her head and began having a seizure. Mr. Burgess called his mother, Christy Willis, and Ms. Willis came to the house approximately 20 minutes later. None of the parties present at the scene called for emergency medical services until an hour and a half after Mr. Burgess initially called Ms. Willis following the incident. Appellant's daughter was ultimately taken to the hospital, and she needed immediate surgery to alleviate the extensive swelling in her brain. The doctors further discovered bruising across the child's body and bone fractures in the child's ribs, collarbone, and forearms that were at various stages of healing, indicating repeated abuse. The child died from her injuries on November 22, 2019.

The Commonwealth charged Mr. Burgess, Ms. Willis and Appellant with various offenses related to this incident. Appellant testified for the Commonwealth at Mr. Burgess' and Ms. Willis' trial. At her trial, Appellant testified that she had been abused by Mr. Burgess for a period of months and she was unable to protect her child from Mr. Burgess because she was afraid for her life. The jury convicted Appellant of the aforementioned offenses and

Appellant timely appealed her judgment of sentence.[2]

Appellant raises the following issues for our review:

> 1. Whether the trial court erred/abused its discretion when it denied Appellant's post-sentence motion for dismissal/mistrial due to prosecutor misconduct?
>
> 2. Whether the trial court erred/abused its discretion when it denied Appellant's request for an expert and for additional funds for expert testimony on domestic violence abuse victims?
>
> 3. Whether the evidence was sufficient to sustain a conviction to find Appellant acted as an accomplice to involuntary manslaughter, aggravated assault, simple assault, and harassment?
>
> 4. Whether evidence was sufficient to sustain Appellant's convictions for involuntary manslaughter, aggravated assault, simple assault, and harassment?
>
> 5. Whether the trial court erred/abused its discretion by *sua sponte* amending Appellant's jury instructions and adding an affirmative duty to Appellant?

---

[2] The court sentenced Appellant on September 2, 2022, and Appellant filed a post-sentence motion on September 13, 2022, beyond the requisite 10-day period. **See** Pa.R.Crim.P. 720. In response to a rule to show cause, Appellant explained that she attempted to electronically file the post-sentence motion on September 12, 2022 but the electronic filing was rejected by the trial court prothonotary's office because Appellant attached a scheduling order to the motion. Appellant's counsel refiled the motion, which was eventually docketed on September 13, 2022. Appellant attached to the response to the rule to show cause automated emails from the PACFile system rejecting and accepting the filings. Nevertheless, clerks of court do not have the authority to reject a timely filing as defective. As such, the rejection of Appellant's September 12, 2022 motion was a breakdown in court operations and we accept Appellant's post-sentence motion as timely filed. **See, e.g., Commonwealth. v. Williams**, 630 Pa. 169, 180, 106 A.3d 583, 589 (2014) (holding that Commonwealth's notice of appeal was timely filed where Commonwealth filed notice of appeal within time limit but prothonotary's office did not docket notice due to defect in filing).

6. Whether the trial court erred/abused its discretion when it did not merge Appellant's conviction for involuntary manslaughter with her conviction for [EWOC]?

7. Whether the trial court erred/abused its discretion by admitting photographs with the minor child in a hospital bed after surgery with the purpose to inflame jurors?

8. Whether the trial court erred/abused its discretion by denying the Appellant's request for individual *voir dire* when Appellant's testimony on the recreation of the incident was published during [co-defendant's] trial and Appellant's case had been subjected to sensational and intense media coverage?

9. Whether a substantial question exists regarding Appellant's sentence for incarceration given Appellant was a victim of domestic abuse and had no prior record or any criminal involvement?

10. Whether the trial court erred/abused its discretion in denying Appellant's post-sentence motion for dismissal/sanctions?

(Appellant's Brief at 38-39) (reordered for purpose of disposition).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Charles H. Saylor, we conclude Appellant's first eight issues merit no relief. The trial court opinion comprehensively discusses and properly disposes of these questions presented.

Specifically, in her first issue, Appellant asserts that the prosecutor's characterization of the evidence during opening and closing statements at her trial placed additional blame on Appellant than the prosecutor's statements regarding the same evidence at Mr. Burgess' trial and Ms. Willis' trial, which

presented Appellant's actions in a more sympathetic light. The trial court found no merit to Appellant's claim because the Commonwealth is free to pursue different prosecutorial theories at separate trials for co-defendants. The mere fact that the prosecutor chose to argue the evidence in a manner that highlights Appellant's culpability at Appellant's trial does not amount to prosecutorial misconduct.[3] (**See** Trial Court Opinion at 4-5).

In her second issue, Appellant argues that the court erred in denying her request for additional funds to hire an expert to opine on whether Appellant's actions were influenced by battered woman's syndrome. The court

---

[3] We further note that Appellant fails to explain how she was prejudiced or deprived of a fair trial as a result of the prosecutor's statements during opening and closing arguments. The only direct evidence presented about the events that transpired on the night that Appellant's child was injured was Appellant's testimony and her prior statements to law enforcement. The prosecutor did not refute Appellant's account of events but merely argued that Appellant's actions, as presented by Appellant's own statements, proved her guilt of the charged offenses. Additionally, Appellant's counsel informed the jury in his opening and closing argument that the prosecutor's characterization of the evidence differed from his statements during Mr. Burgess' trial and Ms. Willis' trial. During his opening statement, Appellant's counsel even read the prosecutor's statements from the other trials to allow the jury to compare the statements. As such, the jury heard about how the prosecutor had "painted a different picture" concerning the evidence at the co-defendants' trials, and we cannot say that Appellant suffered any prejudice under these circumstances. **See Commonwealth v. Harris**, 884 A.2d 920, 927 (Pa.Super. 2005), *appeal denied*, 593 Pa. 726, 928 A.2d 1289 (2007) (stating: "Generally speaking, a prosecutor's comments do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward [an appellant] so that they could not weigh the evidence objectively and render a true verdict. Prosecutorial misconduct, however, will not be found where comments were based on evidence or proper inferences therefrom or were only oratorical flair").

determined that Appellant failed to demonstrate that evidence regarding battered woman's syndrome would be admissible in this case, where self-defense was not an issue and the Commonwealth's theory of criminal responsibility was based on Appellant's parental duty to her child. (***See id.*** at 5-6).

In her third and fourth issues combined, Appellant argues that the evidence was insufficient to demonstrate Appellant's complicity in the actions that led to her child's death because the Commonwealth failed to show that Appellant intended to participate and did, in fact, participate in the criminal activity. Appellant further claims that the evidence was insufficient to sustain her convictions for involuntary manslaughter, aggravated assault, simple assault, and harassment because the Commonwealth failed to establish that Appellant acted recklessly or intentionally caused serious bodily injury to her child.[4] The trial court relied on this Court's holding in ***Commonwealth v. Howard***, 402 A.2d 674 (Pa.Super. 1979), that a parent has a duty to protect his or her child and the failure to dispatch this duty with affirmative acts

---

[4] Appellant's brief fails to discuss the elements of harassment and does not explain how the evidence was insufficient to sustain this conviction. As such, Appellant's sufficiency challenge to her harassment conviction is waived. ***See Commonwealth v. Taylor***, 277 A.3d 577, 590-91 (Pa.Super. 2022) (reiterating that failure to develop adequate argument in appellate brief may result in waiver of claim under Pa.R.A.P. 2119).

creates culpability by omission.[5]  The court noted that the Commonwealth presented evidence that Appellant was aware that her child was being severely abused for a period of four months, Appellant failed to take any actions to protect her child, Appellant failed to take action to get her child medical care for a prolonged period of time as her child was seizing, and Appellant lied to medical staff about the cause of the child's injuries.  The court concluded that the evidence, viewed in the light most favorable to the Commonwealth as the verdict winner, was sufficient to establish the requisite intent and culpability by omission for accomplice liability for her convictions.  (*See* Trial Court Opinion at 6-9).  The court further determined that Appellant's inaction constituted a conscious disregard of a substantial and unjustifiable risk to the health and safety of her child, which ultimately resulted in her death.  *See Commonwealth v. Roebuck*, 612 Pa. 642, 659, 32 A.3d 613, 624 (2011) (holding that accomplice liability does not require specific intent to bring about particular result and can be established if Commonwealth establishes that accomplice acted with mental culpability required of principal actor).

In her fifth issue, Appellant argues that the court erred in modifying the standard jury instructions to include language that a parent has an affirmative duty to protect his or her child, without giving prior notice to counsel of this

---

[5] Appellant's brief fails to address the holding in *Howard* in any meaningful way other than baldly asserting that this case is distinguishable because Appellant's inaction was justified.

modification. The court stated that it properly acted within its discretion to instruct the jury on the law because the facts of this case were not covered by the standard jury instructions and required modification to accurately represent the relevant law as stated in **Howard**.[6] (**See** Trial Court Opinion at 8).

In her sixth issue, Appellant asserts that the court erred by not merging Appellant's EWOC conviction with her involuntary manslaughter conviction for sentencing purposes because both convictions are based on the same underlying conduct. The court found no merit to Appellant's merger claim because both offenses have distinctive elements that are not required to be established for the other offense and as such, neither offense may merge with the other for sentencing. (**See id.** at 10-12).

In her seventh issue, Appellant asserts that that the court erred by admitting inflammatory photographs of the child in a hospital bed, post-surgery, which did not have significant probative value because the medical expert testified to the child's injuries. The court found that the photographs' evidentiary value outweighed any likelihood of inflaming the passions of the jury because the Commonwealth's theory of liability was based on Appellant's failure to protect her child, and for the jury to fully understand the number of

---

[6] Further, there is no merit to Appellant's claim that the court did not give counsel adequate notice because the court informed Appellant's counsel of its intention to modify the standard jury instruction well before closing arguments. (**See** N.T. Trial, 5/11/22, at 309-311, 332-334).

injuries Appellant's child suffered, the jury needed to visually see the injuries.[7] (***See*** Trial Court Opinion at 14).

In her eighth issue, Appellant contends that the court abused its discretion by denying Appellant's request for individual *voir dire* because Appellant's case had been subject to intense media coverage and accounts of Appellant's testimony at Mr. Burgess' trial and Ms. Willis' trial had been published by media outlets. The court explained that although it generally denied Appellant's motion in *limine* requesting individual *voir dire*, the court permitted Appellant's counsel to individually question any prospective juror at sidebar who indicated that he or she had heard anything in the media about Appellant's case. (***See*** Trial Court Opinion at 14-15).

Based on the reasoning set forth above and described in greater detail in the court's opinion, we affirm on the basis of the trial court's opinion concerning issues one through eight.

In her ninth issue, Appellant asserts that the court's imposition of a sentence that included incarceration was excessive. Appellant argues that the court failed to properly consider that she did not have a criminal history and was a victim of domestic abuse who was entirely reliant on Mr. Burgess.

_____

[7] After reviewing the photographs, we further note that the photographs do not depict the child "with her skull cut open," as Appellant asserts. The photographs also do not show any large open wounds. The photographs mostly depict the child in a hospital bed, with wires from various medical equipment attached to her body, and bruising across her head and body.

Appellant concludes that the court abused its sentencing discretion by imposing an excessive sentence and we should vacate the judgment of sentence. We disagree.

As presented, Appellant's claim challenges the discretionary aspects of sentencing. *See Commonwealth v. Lutes*, 793 A.2d 949 (Pa.Super. 2002) (stating claim that sentence is manifestly excessive challenges discretionary aspects of sentencing); *Commonwealth v. Cruz-Centeno*, 668 A.2d 536 (Pa.Super. 1995), *appeal denied*, 544 Pa. 653, 676 A.2d 1195 (1996) (explaining claim that court did not consider mitigating factors challenges discretionary aspects of sentencing).

"Challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right." *Commonwealth v. Phillips*, 946 A.2d 103, 112 (Pa.Super. 2008), *cert. denied*, 556 U.S. 1264, 129 S.Ct. 2450, 174 L.Ed.2d 240 (2009). Prior to reaching the merits of a discretionary aspects of sentencing issue:

> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa.Super. 2006), *appeal denied*, 589 Pa. 727, 909 A.2d 303 (2006) (quoting *Commonwealth v.*

*Hyland*, 875 A.2d 1175, 1183 (Pa.Super. 2005)).

When appealing the discretionary aspects of a sentence, an appellant must invoke this Court's jurisdiction by including in his brief a separate concise statement demonstrating a substantial question as to the appropriateness of the sentence under the Sentencing Code. *Commonwealth v. Mouzon*, 571 Pa. 419, 812 A.2d 617 (2002); Pa.R.A.P. 2119(f). "The requirement that an appellant separately set forth the reasons relied upon for allowance of appeal furthers the purpose evident in the Sentencing Code as a whole of limiting any challenges to the trial court's evaluation of the multitude of factors impinging on the sentencing decision to **exceptional** cases." *Commonwealth v. Phillips*, 946 A.2d 103, 112 (Pa.Super. 2008), *cert. denied*, 556 U.S. 1264, 129 S.Ct. 2450, 174 L.Ed.2d 240 (2009) (quoting *Commonwealth v. Williams*, 562 A.2d 1385, 1387 (Pa.Super. 1989) (*en banc*)) (emphasis in original) (internal quotation marks omitted).

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." *Commonwealth v. Anderson*, 830 A.2d 1013, 1018 (Pa.Super. 2003). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Sierra, supra* at 912-13. A claim of excessiveness can raise a substantial question as to the appropriateness of a sentence under the

Sentencing Code, even if the sentence is within the statutory limits. **Mouzon, supra** at 430, 812 A.2d at 624. Bald allegations of excessiveness, however, do not raise a substantial question to warrant appellate review. **Id.** at 435, 812 A.2d at 627.

Instantly, Appellant failed to include the requisite Rule 2119(f) statement in her appellate brief. Additionally, Appellant baldly asserts that she raised a substantial question without supporting this claim with any relevant authority. Appellant's bald allegation of excessiveness and claim that the sentencing court failed to consider mitigating factors do not pose substantial questions. **See Mouzon, supra**; **Cruz-Centeno, supra** (explaining allegation that sentencing court failed to consider or did not adequately consider certain factors does not raise substantial question). Thus, Appellant has not satisfied the required four-part test for review of her sentencing claim. **See Hyland, supra**.

In her tenth and final issue, Appellant claims that the court erred in denying her motion to dismiss and motion for sanctions based on the prosecutor's failure to file a responsive brief to Appellant's post-sentence motion. Appellant argues that the prosecutor's failure to file a brief, despite being given two extensions of time, should be viewed as a failure to oppose Appellant's issues in her post-sentence motion. Appellant concludes that the court abused its discretion in denying Appellant's motion and we should vacate the court's order denying post-sentence relief. We disagree.

Initially, we note that Appellant's brief fails to explain how the court abused its discretion in denying Appellant's motion to dismiss and motion for sanctions. Appellant merely cites to local court rules and general case law stating that the court, in its discretion, **may** treat a matter as withdrawn if a party fails to file a brief or impose sanctions as the court deems appropriate. (***See*** Appellant's Brief at 76-77). Significantly, Appellant cites no authority to support her assertion that the Commonwealth's failure to respond to an appellant's post-sentence motion constitutes non-opposition to the claims raised therein and warrants granting of the post-sentence motion. As such, Appellant has waived this argument. ***See Taylor, supra***. ***See also Commonwealth v. Johnson***, 604 Pa. 176, 191, 985 A.2d 915, 924 (2009), *cert. denied*, 562 U.S. 906, 131 S.Ct. 250, 178 L.Ed.2d 165 (2010) (stating claim is waived where appellate brief does not include citation to relevant authority or fails to develop issue in any meaningful fashion capable of review). Therefore, Appellant's ninth and tenth issues also merit no relief. Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/26/2024

**IN THE COURT OF COMMON PLEAS OF
NORTHUMBERLAND COUNTY, PENNSYLVANIA
CRIMINAL DIVISION**

COMMONWEALTH OF
PENNSYLVANIA                    :
          APPELLEE         :
                           :
                           :
VS.                                       :             NO. CR-19-1914
                           :
SAMANTHA JO DELCAMP,        :
       DEFENDANT/APPELLANT    :

## OPINION

Saylor, S.J.

This case is about the tragic life of a three year old girl, ▮▮▮▮▮▮▮▮▮, and the mother who failed to protect her from repeated harm at the hands of her paramour. The child had sustained multiple factures on at least three difference occasions. Treatment was not sought for these painful injuries by Appellant, her mother. With the last traumatic event, on October 10, 2019, resulting in the most severe injuries that led to the child's eventual demise at the hands of the paramour, Appellant did not take the necessary action to obtain immediate medical care to save her.

On October 10, 2019, Appellant's paramour, Jahrid Burgess had a fit of rage because the child was not eating her dinner. He picked her up by the throat, held her against the wall, threw the child toward a miniature chair/sofa, missed, the child hit her head and went into a seizure. Rather than calling 911 for emergency services, Burgess called his mother to come where he googled for information on seizures. Burgess' mother, Ms. Willis arrived about twenty minutes later. No one calls 911 until finally one is placed from Ms. Willis' phone by Willis. The time frame from the initial call from Appellant's residence to Ms. Willis until when 911 was eventually called was an interminable one hour and twenty-five minutes.

1



By the time the child arrived at the hospital nearly two hours had passed. Appellant did not call 911, or if being prevented from use of the cell phone by Burgess, leave the residence to a neighboring home for assistance in making a call. According to the medical testimony, the delay in treatment, as well as the EMT's not being told what actually happened to the child prior to transport, lessened the child's chance for survival. After a difficult hospitalization the child succumbed to her injuries a month later on November 22, 2019 due to multiple blunt force injuries.

The day after her arrival at the hospital, the child was examined by a pediatrician specializing in child abuse at Geisinger Medical Center, Dr. Paul Bellino. It was his findings that apart from the immediate injuries to the child there was evidence of numerous earlier in time healed fractures, some from about six weeks previously and others that were older.

The immediate injuries from the day before are bruising under the left arm pit, the middle portion of her abdomen, to her right hip, over the right eye, both knees, right forearm and elbow, neck, back, right buttock and thigh. A CT scan showed a very large collection of blood in her head and the right side of the brain was very swollen, requiring the surgeons to open her skull and remove a portion of her brain, to treat her brain injuries.

Dr. Bellino obtained CT scans of her chest and abdomen that revealed a number of fractures in her chest. She had fractures of both of her collarbones that were old, weeks prior to her admission. The child had nine rib fractures, one broken in two places, not as old as the collarbone. There were also healing fractures of the bones of her forearms on both sides. In addition, there was bleeding around both of her kidneys that was not a recent hemorrhage, about several weeks since onset.

These findings were the basis of Dr. Bellino's opinion that the child had been subjected to repeated abuse. They recurred over six or more weeks, not including the physical trauma

2

inflicted the night prior to the hospitalization. Appellant did not get her treated, except one time.

The Appellant took up residence with Burgess during the summer of 2019. Sadly the Appellant was able to dissuade the Children and Youth caseworkers of any problems. The day of the final episode of harm, October 10, 2019, a CYS caseworker saw the child who appeared okay, so a body exam was not done. Appellant denied any allegations of domestic violence for herself or any abuse toward the child on several occasions to the caseworker, including the morning of the 10th. As noted above, the child died 43 days later.

Following a two-day jury trial, Appellant was found guilty of Involuntary Manslaughter and multiple other counts. On September 2, 2022, Appellant was sentenced by this Court.[1] On September 13, 2022, Appellant filed a Post Sentencing Motion, which was denied on December 30, 2022. On December 20, 2022, Appellant filed a Motion to Dismiss and Motion for Sanctions, which was denied on December 30, 2022. Appellant appealed and on January 20, 2023, the court ordered a 1925(b) statement of reasons complained of on appeal. The Appellant's Statement was filed on February 2, 2023. The Appellant on appeal raises basically ten issues, which will be addressed seriatim hereafter.

---

[1] Appellant was sentenced by this Court on Count 1-Involuntary Manslaughter, victim less than 12 years old to a period of 16 months to 44 months; on Count 2-Aggravated Assault, causing serious bodily injury to a period of 36 months to 72 months to run consecutively to Count 1; on Count 3-Aggravated Assault, victim less than 13 years old to a period of 60 months to 120 months to run consecutively to Count 1 and 2; on Count 4-Endangering Welfare of Children to a period of 24 months to 48 months to run consecutively to Counts 1,2,3; on Count 5-Obstruction to a period of 8 months to 16 months to run consecutively to Counts 1,2,3,4; on Count 7-Hindering to a period of 1 year probation to run concurrent with Count 1; on Count 9- Recklessly Endangering Another Person to a period of 1 year probation to run concurrent to 1; on Count 10-Flase Reports to a period of 1 year probation to run concurrent to Count 1; on count 11-Harassment to a fine and costs; Count 6 merged with Count 3 for sentencing purposes; Count 8 merges with Count 6 for sentencing purposes.

3

# I.
## Prosecutorial Misconduct

There is a somewhat confusing argument about the interplay between the District Attorney's approach as inconsistent in the separate trials previously conducted in *Commonwealth v. Burgess*, *Commonwealth v. Willis* and the case at bar. Appellant contends that the District Attorney unethically represented two incompatible versions of the incident. As the trial judge in the Burgess trial and the one at bar, there is no support for this assertion. The evidence presented did not vary in any significant manner. The core witnesses of Trooper Seibert and Reaves and Dr. Paul Bellino testified in both cases. Appellant testified as to her version of events in the Burgess trial of her own volition, without invoking her fifth amendment privilege.

In any event, there is no existing "proposition that the Commonwealth may not pursue different prosecutorial theories in separate murder trials of codefendants." *Commonwealth v. Koehler*, 36 A.3d 121, 139 (Pa. 2012). Of course the circumstances as to each defendant requires different approaches at their trials; however, there was nothing here of any overreaching as to Appellant's trial.

Prosecutorial misconduct was asserted at trial when the District Attorney attempted to introduce a video of an interview by Trooper Seibert of the Appellant. Appellant objected that if any inconsistent statements are allowed, the following exchange took place:

> MR. MATULEWICZ: There are a couple more statements she makes. She is kind of all over the place. I think it was going to end at 12:03. Then it's going to skip ahead because I'm taking all references to the Wilkos Show out.
>
> MR. O'DONNELL: Your Honor, if they are saying that she is inconsistent, she is essentially lying. That is an Ethical Rule Violation 3.3, Candor to the Tribunal. You have a duty to disclose, if you believe that they presented as their witness is not telling the truth and is lying. So, today they can't go back and say she is lying, or not telling the truth. That is what they are trying to do. That needs to be something that is disclosed. That is something that will ^^ effect both cases.

4

So, again, you can't represent a case both ways. You can't say this witness is telling the truth at one trial, and now say she is lying. There is a duty to disclose that. That is Ethical Code Rule 3.3, Candor to the Tribunal. That is being violated. This whole trial it's being violated.

MR. MATULEWICZ: I don't believe that she's lying. I just -- she is just kind of jumping from topic to topic, is what I said.

THE COURT: You are presenting an interview that she gave –

MR. MATULEWICZ: Right.

THE COURT: -- and she is the defendant. She has made various admissions about what occurred over a course of conduct that is relevant to the crimes with which she has been charged. Relevant to her duty as a parent to project her child, so the Commonwealth is proceeding properly. The request for mistrial is denied. We will -- can you skip more of the video?

Tr. pp. 280-281; see also Tr. p. 285.

It was properly admitted evidence of her statements about the occurrence. There is no impropriety by the District Attorney in introducing this evidence and for the jury to determine Appellant's truthfulness when the statements were made. Moreover, defense counsel never pointed to any portion of the record of the Burgess trial to support his argument. Finally, defense counsel had the full opportunity to question any of the witnesses as to any inconsistencies in any testimony between the two trials, but rarely did so.[2]

## II.
## Denial of Domestic Violence Expert

There was a pretrial motion for the appointment of an expert in relation to her defense that was granted on April 28, 2020, for the sum of $ 2,500. Subsequently, Appellant filed a motion for additional funds on January 21, 2022 for a psychiatric evaluation to ascertain if she suffers from "battered women syndrome."

---

[2] The redacted video was available for defense counsel to review during a recess.

First, this motion for a particular type of evaluation was made 27 months after the final occurrence, and a hearing was not requested to provide any evidence in support thereof. This was untimely.

Second, there was no legal authority provided to support the use at trial here of any such expert opinion. There has only been expert testimony on the Battered Women's Syndrome in the situation where self-defense is asserted. *Commonwealth v. Miller*, 63 A.2d 614 (Pa. Super. 1993); *Commonwealth v. Grove*, 526 A.2d 614 (Pa. Super. 1987). It has no bearing on the Appellant's parental objections regarding the protection of her child, to assure the well-being and safety of a three-year old dependent on her. The court had no reason to release additional funds when an evaluation and/or expert testimony would be inadmissible at trial. The *Miller* court held that "[t]he syndrome does not represent a defense to homicide in and of itself, but rather, is a type of evidence which may be introduced on the question of the reasonable belief requirement of self-defense in cases which involve a history of abuse between the victim and the defendant." *Miller* at 622. The Appellant did not allege self-defense nor were her actions the result of attempting to protect herself from imminent death or serious bodily injury; her three-year-old daughter was the victim.

### III.
### Accomplice Liability

The next issue raised is that there was not sufficient evidence to find the Appellant was an accomplice to Involuntary Manslaughter, Aggravated Assault, Simple Assault, and Harassment. This contention is without merit as accomplice liability was properly applied even though there is an "act" requirement to the crimes. An omission is a basis for liability where "a duty to perform the omitted act is otherwise imposed by law." 18 Pa.C.S.A. § 301(b)(2); *Commonwealth v. Howard*, 402 A.2d 674, 676 (Pa. Super. 1979). In *Howard*, the fact pattern is similar to the instant case. The victim, a child, was killed via the physical abuse of the mother's

6

paramour. The court in *Howard* affirmed the lower court's conviction for involuntary manslaughter as "the evidence was sufficient to prove that appellant's failure to protect the child was a direct cause of her death, and that such failure was reckless or grossly negligent under the circumstances."

Under 18 Pa.C.S.A § 2504, "A person is guilty of involuntary manslaughter when as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, he causes the death of another person." Here, the Appellant's culpability is formed by her omission:

> omission to act may create criminal culpability under our Crimes Code even though the law defining the offense, as here, requires an "act", where "a duty to perform the omitted act is otherwise imposed by law." 18 Pa.C.S.A. § 301(b)(2). Here, appellant and the victim stood in the relation of parent and child. A parent has the legal duty to protect her child, and the discharge of this duty requires affirmative performance. (citations omitted)

*Howard* at 676. Appellant allowed her child to get abused over the period of four months from July 2019 through October 2019. The child's death is a direct result from the Appellant's failure to protect her child from Burgess' abuse. Like *Howard*, the immediate cause of death was from injuries inflicted by Burgess. However, the Appellant is still culpable for her continuing failure to protect her child during this time. The Appellant did not leave the relationship, she did not seek outside support from family or the authorities, she lied multiple times to CYS when asked if she and the child were being abused. Furthermore, on the night of the incident that caused the death Appellant did not get her child the medical care she needed. Instead, she listened to Burgess and his mother while they googled information about seizers and debated calling 911 because Burgess did not want to get into trouble. Ultimately, Appellant witnessed and had knowledge of a pattern of physical beatings and abuse inflicted on her three-year-old child. She "consciously disregarded a manifestly apparent risk to the health and safety of her young child

7

and that this neglect was a gross deviation from the standard of conduct the reasonable parent would observe under the circumstances." *Id.* at 678.

## IV.
## Jury Instructions

The Appellant next contends that the court erred by "sua sponte amending Appellant's jury instructions." However, Appellant did not submit any proposed jury instructions or points for charge, except the standard jury instruction for third degree murder. At trial, the essence of Appellant's objection was that the court charged the jury that a parent has a legal duty to protect her child, and the discharge of this duty requires affirmative performance on her part. Tr. p. 363. This was based upon the principles enumerated in *Commonwealth v. Howard,* supra, and as noted above.

> The Suggested Standard Jury Instructions themselves are not binding and do not alter the discretion afforded trial courts in crafting jury instructions; rather, as their title suggests, the instructions are guides only.

*Commonwealth v. Eichinger,* 108 A.3d 821, 845 (Pa. 2014).

The unique facts of this case as to parental duty are not covered by the standard instructions, and thus the court would have been remiss if the jury was not properly instructed by the tailored instructions.

## V.
## Sufficiency of the Evidence

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Commonwealth v. Karkaria, 533 Pa. 412, 625 A.2d 1167 (1993). Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. Commonwealth v. Santana, 460 Pa. 482, 333 A.2d 876 (1975). When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Commonwealth v. Chambers, 528 Pa. 558, 599 A.2d 630 (1991).

8

*Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000).

The jury was within its province to accept the extensive medial testimony of the physical abuse inflicted on this child over the course of over six weeks. Appellant did not get the child treatment. It was a criminal failure to protect her child on the evening of October 10, 2019. There were the prior lies to the caseworkers of CYS that the child was unharmed and safe. She had many opportunities to leave the abusive relationship.

Appellant testified at the trial that she knew in August of 2019 that Burgess was beating her daughter. Tr. p. 318. He slapped, kicked, and punched her. On another occasion she was aware Burgess broke the child's bones. *Id.* There was also the incident that he tortured the child with water in the bathtub. *Id.* She admitted that she failed in her parental duty to protect her. Tr. p. 320.

At the hospital, she agreed with Burgess and his mother to make up a story to tell the police. She then protected Burgess in her initial statement to the investigators.

Finally, there was a very disturbing video that Burgess sent her through his mother (evidently this was on an occasion she was away from him) where he was making the child set on a potty with both arms held up in the air with a terrified look in her eyes. Appellant's response was as follows:

> Q: And you didn't leave after that?
> A: Because he made my daughter sit on the toilet with her arms in the air?
> Q: Yeah.
> A: I don't see reason to - - why to leave. It didn't show that he hit her or say he hit her. So, I don't understand.

Tr. p. 326.

She is indifferent. There was no compassion for her daughter in her situation of repeated abuses by her paramour. She was not the direct actor, but she was certainly complicit with him. The child had no one to protect her.

9

## VI.
## Sentence

Appellant challenges this court's determination that she be sentenced to incarceration. She argues that she was a victim of domestic abuse and with no prior record, incarceration was not warranted.

The court followed the standard ranges under the sentencing guideline with consideration of the victim being a minor. There was due consideration of the pre-sentence investigation to support the sentence. *Commonwealth v. Fowler*, 30, 893 A.2d 758, 766 (Pa. Super. 2006). The court satisfied the requirements of 42 Pa.C.S.A. § 9718(2)(d) and exercised its discretion to impose a greater sentence than provided by the minimum. There was no basis for the court to impose a mitigated range sentence, and that would still require incarceration. The court considers the role of the Appellant here as her daughter was subjected to repeated physical abuse that ultimately resulted in her death as warranting a significant period of incarceration.[3]

## VII.
## Merger

The seventh issue raised is that Count 2 of the Amended Information Aggravated Assault should have merged with Count 3 Aggravated Assault. This contention is without merit as the doctrine of merger does not preclude convictions for both these offenses. The merger doctrine prohibits crimes from merging for sentencing purposes "unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense." 42 Pa.C.S.A. § 9765. Thus, all the elements of the one offense must be subsumed in the other offense. If there are elements of the one offense that are not

---

[3] Appellant claims there was a reference at sentencing to a video that was not admitted into evidence; however, the video was played in court, as well as extensive testimony related therein Tr. p. 325-328.

10

required in the other offense, then the crimes do not merge. As our Supreme Court held in

*Commonwealth v. Baldwin*, 985 A.2d 830 (Pa. 2009):

> A plain language interpretation of Section 9765 reveals the General Assembly's intent to preclude the courts of this Commonwealth from merging sentences for two offenses that are based on a single criminal act unless all the statutory elements of one of the offenses are included in the statutory elements of the other.

*Commonwealth v. Calhoun*, 52 A.3d 281, 284 (Pa. Super. 2012) (quoting *Commonwealth v.*

*Baldwin*, 985 A.2d 830, 837 (Pa. 2009)).

This present statutory doctrine of merger was summarized in *Calhoun*, as follows:

> In any event, Section 9765, particularly as elucidated by our Supreme Court in *Baldwin*, evinces a clear intent to confine merger for sentencing purposes to the defined condition that all of the statutory elements of one of the offenses are included in the statutory elements of the other.

*Id.* at 285.

Moreover, in *Commonwealth v. Edwards*, 256 A.3d 1130,1137 (Pa. 2021), it was

clarified that "Section 9765 does not require an evaluation of the specific facts as applied to the

elements." It is clear that the merger analysis "begins and ends with the statutory elements of

each offense." *Id.* As far as merger of different offenses, Count 2 Aggravated Assault, 18 Pa.

C.S.A. § 2702(a)(1) and Count 3 Aggravated Assault Victim Under 13, 18 Pa. C.S.A. § 2702

(a)(9) do not merge in accordance with 42 Pa. C.S.A. § 9765. The elements of each differ with

the age requirement.

The next issue raised also pertains to a merger analysis. Appellant contends that Count-

1 of the Amended Information-Involuntary Manslaughter 18 Pa. C.S.A. § 2504, should have

merged with Count 4- Endangering Welfare of Children, 18 Pa. C.S.A. § 4304(a)(1). The two do

not merge in accordance with 42 Pa. C.S.A. § 9765 for sentencing purposes.

The crime of EWOC has been characterized in *Commonwealth v. Krock*, 282 A.3d 1132

(2022), as being specifically designed to criminalize child abuse:

11

> It is well-established that child welfare statues, such as EWOC, are "designed to cover a broad range of conduct in order to safeguard the welfare and security of ... children." *Commonwealth v. Mack*, 467 Pa. 613, 359 A.2d 770,772 (1976). In determining what conduct violates section 4304, "the common sense of the community, as well as the sense of decency, propriety, and the morality which most people entertain is sufficient to apply the statute to each particular case, and to individuate what particular conduct is rendered criminal by it." *Commonwealth v. Howard*, 257 A.3d 1217, 1222 n.9 (2021), citing *Commonwealth v. Marlin*, 452 Pa. 380, 305 A.2d 14, 18 (1973).

Id. at 1138.

It is involuntary manslaughter "when as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, [s]he causes the death of another person" 18 Pa.C.S.A. § 2504. The statutory elements of EWOC are that "A parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support." 18 Pa.C.S.A. § 4304(a)(1).

Clearly, there are different elements to these two crimes that do not allow the two to merge. Specially, EWOC has a duty requirement that the defendant had owed a duty to the child as a parent, guardian, or supervisor, which involuntary manslaughter does not. There is also not an age requirement to involuntary manslaughter as there is with EWOC. The victim needs to be a child under the age of 18. *Commonwealth v. Grassmyer*, 402 A.2d 1052 (Pa. Super. 1979), summarized that Pa.C.S.A. § 4304 "requires that the defendant have a certain status relationship to the victim (parent, guardian, or supervisor), that the victim be under 18 years or age, and that the defendant's act is a violation of a duty of care, protection, or support." Id. at 1054. In the instant case, Appellant was the natural mother, and the child was three years old. Therefore, there is no merger available for sentencing purposes under 42 Pa.C.S.A. § 9765.

12

## VIII.
## Amendment of Information

The Information referred to October 24, 2019, when the testimony presented in the

Commonwealth's case in chief centered on the evening of October 10, 2019, when the child

was severely injured. When this was pointed out in chambers, the District Attorney made a

motion to amend on the basis of a clerical error. Appellant had notice of the relevant actual

dates through voluminous discovery provided to her well in advance of trial.

Pennsylvania Rule of Criminal Procedure 564 states:

> The court may allow an information to be amended when there is a defect in form, the description of the offense(s), the description of any person or any property, or the date charged, provided the information as amended does not charge an additional or different offense. Upon amendment, the court may grant such postponement of trial or other relief as necessary in the interests of justice.

*Commonwealth v. Sinclair*, 897 A.2d 1218, 1221 (Pa. Super. 2006). The Pennsylvania Superior

Court has summarized the test in *Sinclair*, as follows:

> the purpose of Rule 564 is to ensure that a defendant is fully apprised of the charges, and to avoid prejudice by prohibiting the last minute addition of alleged criminal acts of which the defendant is uninformed. *Commonwealth v. Duda*, 831 A.2d 728, 732 (Pa. Super. 2003). The test to be applied is:
> [W]hether the crimes specified in the original indictment or information involve the same basic elements and evolved out of the same factual situation as the crimes specified in the amended indictment or information. If so, then the defendant is deemed to have been placed on notice regarding his alleged criminal conduct. If, however, the amended provision alleges a different set of events, or the elements or defenses to the amended crime are materially different from the elements or defenses to the crime originally charged, such that the defendant would be prejudiced by the change, then the amendment is not permitted. *Commonwealth v. Davalos*, 779 A.2d 1190, 1194 (Pa. Super. 2001) (citation omitted).

*Id.*

Clearly, under the present circumstances, Appellant was fully apprised of the dates of

the alleged offenses throughout the course of the proceedings, and there has been no prejudice

to her by the allowance of the amendment to correct the typographic error.

13

## IX.
## Photographs

Appellant asserts error by the court in allowing photographs for viewing by the jury of the child in the hospital.

The standard as laid out in *Commonwealth v. Johnson*, 42 A.3d 1017, 1033-34 (Pa. 2012) requires:

> [The] court must determine whether the photograph[s] [are] inflammatory. If not, it may be admitted if it has relevance and can assist the jury's understanding of the facts. If the photograph[s] [are] inflammatory, the trial court must decide whether or not the photographs are of such essential evidentiary value that their need clearly outweighs the likelihood of inflaming the minds and passions of the jurors.

The court properly admitted photographs of the victim in hospital. The photographs were admitted in accordance with their evidentiary value, to show the jury the nature of the injuries of the victim, as the victim had bruising to her face, and over her front and back. For the jury to fully understand the number of injuries, as there were many, they needed to visually see them. The photos were illustrative for when the healthcare provider testified as to the child's injuries and limited in number.

## X.
## Individual Voir Dire

This court denied Appellant's pretrial Motion in Limine for individual voir dire. This was denied generally; however, the Appellant was allowed by this court's order of April 12, 2022, to question individually any prospective juror who indicated that he or she had heard anything about the case by way of any media coverage.[4]

Individual voir dire is only required in capital cases; in all non-capital cases, the trial court has discretion to determine who will ask the questions of the jurors and whether jurors

---

[4] Appellant had appeared on the Steve Wilkos national television program.

will be questioned individually or collectively. Commonwealth v. Hathaway, 500 A.2d 443, 447 (Pa. Super. 1985); Pa.R.Crim.P. 631 (F).

The custom and practice in Northumberland County is for the judge to ask preliminary questions of the panel, followed up by counsel, with individual questioning when appropriate at side bar. Appellant's counsel was given the full opportunity to question any prospective juror individually when a juror had any prior knowledge or publicity about the case. There were only 6 prospective jurors that responded to defense counsel that had read or heard about the case, and individual vior dire at sidebar of these jurors was not requested; therefore, the issue is waived.

## Conclusion

In light of the aforementioned disposition of the issues raised, it is respectfully submitted that the court's decisions were free from legal error and that there is no merit to Appellant's appeal. This court respectfully submits that Appellant's judgements of sentences be affirmed.

BY THE COURT:

_____ 3/20/23
Charles H. Saylor, Senior Judge

cc:
District Attorney
Michael O'Donnell, Esq.
Court
Legal Journal